[Crim. No. 2842.   In Bank.—April 1, 1926.]

## THE PEOPLE, Respondent, v. NORMAN SELBY, Appellant.

[1]   CRIMINAL LAW—MURDER—EVIDENCE.—In a prosecution for murder, where it appeared that the deceased and the defendant were living together as man and wife, evidence of conversations between the deceased and her divorced husband on the day of her death and the day prior thereto were admissible; although held in the absence of defendant, for the purpose of showing the con-

dition of mind of the deceased just prior to her death from which the jury might infer that she was not without hope that the former relationship with her husband might be resumed, thus tending to refute the defendant's theory of suicide or attempted suicide by the deceased.

[2] ID. — REFRESHING MEMORY OF WITNESS — TESTIMONY BEFORE GRAND JURY.—In a prosecution for murder, where the testimony of a witness for the prosecution before the grand jury tended to show that the defendant had admitted to her he had killed the deceased, whereas her testimony at the trial was, to say the least, equivocal on the point, it was proper to allow the district attorney to present to the witness a transcript of her testimony taken before the grand jury and to ask her if she so testified, for the purpose of refreshing her memory.

[3] ID.—MOTIVE—MALICE—EVIDENCE.—In a prosecution for murder, evidence that on the morning after deceased's death defendant went to a store formerly conducted by the deceased and held up and robbed a number of patrons and then went to the place of business of friends of the deceased and shot both of them, tended to show a malignant disposition toward both the deceased and her friends which would furnish a motive for the homicide, but it is held in this case that even if the admission of the evidence was erroneous it was not sufficiently prejudicial to justify a reversal of the judgment in view of all the evidence.

[4] ID.—PROOF OF CORPUS DELICTI—EXTRAJUDICIAL STATEMENT AND ADMISSIONS — INSTRUCTIONS. — Upon *prima facie* proof of the *corpus delicti,* the extrajudicial statements, admissions or confessions of the accused may be admitted in evidence, and having been so admitted may, with the other evidence, be considered by the jury in its determination whether or not all the elements of the crime and the defendant's connection therewith has been established to a moral certainty and beyond all reasonable doubt; and an instruction which in effect requires that the *corpus delicti* be proved beyond any reasonable doubt before extrajudicial statements, admissions or confessions of the defendant may be considered at all, is properly refused.

[5] ID.—DELIBERATION BY JURY—INSTRUCTIONS.—In a prosecution for murder, there was no error in instructing the jury that they would be given ample time for deliberation, and that, upon retiring to the jury-room it would be better that they refrain from emphatic declarations of opinion and hold their minds "in a state of abey-

3. Evidence of other crimes to show motive for homicide, note, 62 L. R. A. 199. See, also, 13 Cal. Jur. 686; 8 R. C. L. 201.

4. Proof of *corpus delicti* in homicide, note, 68 L. R. A. 35. See, also, 8 Cal. Jur. 167, 234; 13 Cal. Jur. 676; 13 R. C. L. 739.

ance" so that they might "fully and freely interchange views with each other," it being "for the interests of the state and the benefit of the defendant, that a verdict should be returned."

(1) 17 C. J., p. 203, n. 97; 30 C. J., p. 165, n. 70. (2) 40 Cyc., p. 2457, n. 32. (3) 30 C. J., p. 182, n. 70, p. 443, n. 56. (4) 16 C. J., p. 637, n. 56, p. 738, n. 76, p. 855, n. 12, p. 970, n. 42 New, p. 1048, n. 66. (5) 16 C. J., p. 961, n. 83.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. L. Geisler, G. H. Shreve and F. H. Thompson for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

LAWLOR, J.—The defendant, Norman Selby, was charged with the murder of one Theresa W. Moers in an indictment returned by the grand jury of the county of Los Angeles. To the charge the defendant pleaded not guilty and upon the trial he was convicted of the crime of manslaughter. A motion for a new trial was duly interposed on his behalf and denied; judgment of conviction was pronounced, whereupon he appealed from the said judgment and from the said order denying his motion for a new trial.

Appellant states in his brief that "In view of the conflict of evidence as to the cause and manner of deceased's death, insufficiency of the evidence is not urged here as a ground for reversal." While counsel for appellant in his oral argument on the hearing of the appeal herein discussed the evidence at some length in support of the claim that the refusal to give an instruction proposed by appellant, hereinafter considered, was prejudicial, nevertheless, it was again conceded that the evidence was sufficient as matter of law to support the verdict rendered. The appellant thus having conceded the sufficiency of the evidence to support the verdict, a general statement of the facts and circumstances surrounding the death of the deceased will suffice before taking up the asserted errors relied upon for a reversal.

The deceased came to her death from a bullet wound in her head, inflicted on the night of August 12, 1924, between 11:30 P. M. and midnight, in the Nottingham Apartments, in the city of Los Angeles, where she and appellant had been living together as husband and wife. As a defense the appellant maintained that the deceased had either committed suicide or died as the result of the accidental discharge of a revolver while struggling with him as he was attempting to disarm her to prevent her self-destruction. The evidence of the prosecution tended to show that the body of the deceased was found by the janitor in the apartment on the morning of August 13, 1924, and that it was, at the time, partly covered with her clothing and a sheet or bedcover; that there were signs of violence indicated by bruises about the eyes, the arms, one leg, and the right side of the chest, as well as the bullet wound in the head; that a revolver, having one exploded shell, was found lying close to the body; that a man was seen running from the areaway of the apartment house on the night deceased met her death; that the appellant had taken his automobile from the garage on the night of the deceased's death between 11 and 11:30 P. M., and returned it about 4 A. M., at which time, as testified by the garageman, appellant was intoxicated; that appellant then stated to the garageman "You don't know what I know"; that the appellant, according to the testimony of certain police officers, came into the Hollywood police station about 3:45 A. M. and said, among other things, "Wait till you see the papers," and that he "would go to the electric chair for Theresa"; that before this he had driven to the home of his sister, Mrs. Jennie Thomas, a witness for the prosecution, a distance of about eight miles from the apartment, arriving about 1 or 1:30 A. M., gave her certain jewelry and personal effects belonging to the deceased and himself and told her that the former was dead, the witness testifying, "I am not certain in my mind whether he said she was dead or that he had killed her, because I was frightened," but the witness, on being confronted with her testimony before the grand jury, admitted she may have testified, "He told me she was dead . . . and that he had killed her; he was afraid he had, but he had nothing more to live for himself."

[1]  1. The first point relied upon for a reversal touches on the admission of certain evidence. The prosecution called as a witness, among others, F. M. Andreani, an attorney, who had a short time before the homicide represented the deceased in an action of divorce against her husband. This witness was permitted, over the objection of the appellant, to testify to two conversations, occurring respectively on August 11 and 12, 1924, a day prior to and the day of her death, between the deceased and her divorced husband in the office of her attorney in which property and other matters were discussed and having been held in the absence of the appellant. The deceased saluted her former mate with a kiss and what was said tended to show that an attitude of friendliness existed between the deceased and her husband. A motion to strike out this testimony was denied. This testimony was apparently admitted by the trial court as tending to show motive for the offense charged against appellant. In view of the appellant's defense that the deceased committed or attempted to commit suicide we are of the opinion that these conversations were properly admitted in evidence not to show motive but to reveal the condition of mind of the deceased just prior to her death from which the jury might have inferred that she was not without hope that the former relationship might be resumed, thus tending to refute the appellant's theory of suicide. And these conversations or declarations of the deceased immediately prior to her demise, as bearing on the question whether she intended to commit self-destruction, were admissible whether or not made in the presence of the appellant. The cases of *People* v. *Tugwell*, 28 Cal. App. 348, 359 [152 Pac. 740], and *People* v. *Wilson*, 14 Cal. App. 518 [112 Pac. 579], support this view, though in those cases the evidence of the conversation or declarations of the deceased just prior to . death tended to support the suicide theory whereas here it tended to overcome such theory. The testimony in the instant case was not admissible to show motive because it involved hearsay, but the hearsay quality, as we have indicated, would not be objectionable when admitted as tending to refute the theory of suicide. And the rule is that if testimony is admitted on a wrong theory, but is admissible under another theory, its admission under the wrong theory will not constitute error.

[2] 2. We find no error in the action of the court in permitting the district attorney to present to the prosecution's witness, Mrs. Jennie Thomas, a transcript of her testimony taken before the grand jury and to ask her if she so testified. The testimony of this witness before the grand jury tended to show that the appellant had admitted to her he had killed the deceased whereas her testimony at the trial was, to say the least, equivocal on the point. The witness at the trial had, in answer to an interrogation apparently intended to aid in refreshing her recollection, admitted she may have so testified before the grand jury but, if she did, "it was my theory of expressing it, not his." In view of the uncertain state of the witness' recollection of the fact in question we think the prosecution followed the proper course in attempting to refresh her recollection. (Sec. 2047, Code Civ. Proc.) In *People* v. *Durrant,* 116 Cal. 179, 213 [148 Pac. 75, 84], involving a charge of murder prosecuted by information, the court allowed the prosecution to refresh the recollection of the witness by his deposition taken at the preliminary examination. We perceive no reason why the testimony of a witness given before a grand jury may not likewise be availed of to refresh the recollection of the witness. Citing *Reid* v. *Reid,* 73 Cal. 206, 209 [14 Pac. 781], it was held in *People* v. *Durrant, supra,* that the testimony at the preliminary examination may "at least be regarded as a private memorandum." Under the present practice the defendant is entitled to a copy of the testimony taken before the grand jury. (Sec. 925, Pen. Code.)

[3] 3. It is claimed that the testimony of various witnesses in detailing certain acts and statements of the appellant, immediately after and on the morning following the death of the deceased, was improperly admitted. Some of this testimony was to the effect that on the morning after deceased's death the appellant went to the store conducted by the deceased during her lifetime and there held up and robbed a number of patrons; that he then repaired to the place of business of a Mr. and Mrs. Samuel Schapp, friends of the deceased, shot both of them and then left the place. It was urged in support of the admission of this testimony that the holding up of a number of patrons in the store of the deceased and the assault upon her friends tended to show *animus* toward her and her friends; that it tended to

furnish a motive for the crime. The evidence sufficiently showed that some of the persons thus assailed were friends of the deceased who had incurred the appellant's ill will by attempting to influence her against him and thus tended to show a malignant disposition toward both deceased and her friends which would furnish a motive for the homicide. In any event, even if it be assumed the rulings complained of were erroneous, we think that the errors were not sufficiently prejudicial to the appellant to justify a reversal in view of all the evidence in the case and that it tended to support his claim that he was insane.

[4] 4. The following instruction was requested by the appellant and refused: "With respect to the proof of the *corpus delicti,* I instruct you that in determining that question you must not consider any evidence of alleged confessions, admissions or statements of the defendant. Evidence of alleged confessions, admissions and statements may not be considered for any purpose until you have first satisfied your minds to a moral certainty and beyond a reasonable doubt that the deceased came to her death through the unlawful act of some person other than herself.

"Proof of the dead body alone, joined with evidence of alleged confessions, admissions and statements of the defendant, would not be sufficient to convict, for there must be evidence tending to show the commission of a homicide and unlawful killing before evidence of alleged confessions, admissions or statements of defendant could be considered for any purpose.

"Evidence of alleged confessions, admissions or statements of the defendant alone cannot be relied upon to establish as sufficient any fact which is a necessary ingredient to form the body of the crime.

"If, after consideration of the evidence in connection with the proof or lack of proof of the *corpus delicti,* you believe that proof of one or more of the necessary elements of the *corpus delicti,* as I have defined it to you, would be wholly lacking without the evidence of alleged confessions, admissions or statements of the defendant, then I instruct you you must acquit the defendant."

It is contended by the People that "It is not the law of this state that evidence of confessions, admissions and statements of the defendant may not be considered for any purpose until the jury have first satisfied their minds to a moral

certainty and beyond a reasonable doubt that the deceased came to her death through the unlawful act of some person other than herself. . . .

"It was enough under all the authorities if the killing of the deceased by violence was established by a preponderance of satisfactory proof, and, after that, if the confessions and admissions of the defendant, even though extrajudicial, tended to corroborate the proof of such death by violence and to show that the defendant committed the act of violence, the jury should be permitted, and have always been permitted, to take such admissions and confessions into consideration in arriving at a proper verdict. The true rule is well stated in volume 8, page 168, section 248 of the recent and well written work, California Jurisprudence, and in a note of that section, attention is called to the fact that some of the expressions in *People* v. *Tapia,* 131 Cal. 651 [63 Pac. 1001], run counter to and have been practically overruled by other California authorities."

In response thereto the appellant urges that the "Respondent cites and quotes from numerous cases the force or logic of which we cannot see. Most of the cases thus quoted from refer to the admissibility in evidence of confessions and admissions and the extent to which the proof of the *corpus delicti* must go to supply a foundation for this admission. With that rule we are in accord. There is not the slightest question but that slight proof is all that is necessary to justify the admission of such evidence.

"But there is a clear and sharp line of demarcation between those cases so holding and the cases which refer to the quantum of proof of the *corpus delicti* required as a matter of sufficiency of evidence to sustain a verdict of guilty based upon it and as to when and how confessions and admissions may be considered by the jury in making up their verdict.

"The unbroken line of authority in this state is that the *corpus delicti* and all of its essential elements must be established by the prosecution in the final analysis by evidence independent of extrajudicial statements, admissions or confessions of the accused."

In our view the requested instruction did not contain a correct statement of the law and it was therefore properly refused. Preliminarily, it should be kept in mind that there

is a sharp distinction between the rule governing the *admission* of extrajudicial statements, admissions or confessions and the rule governing the jury in its *consideration* of such evidence after it is admitted. Concerning the *admissibility* of extrajudicial statements, admissions or confessions it has been correctly declared that "Proof of the *corpus delicti* of the conclusive and convincing character required to support a conviction of the crime charged was not a prerequisite to the reception in evidence of the extrajudicial statements of the defendant that he had killed the deceased. *Prima facie* proof of the *corpus delicti* was sufficient for that purpose; and it was not essential to the proof and purpose to show that the crime charged was committed by the defendant." (*People* v. *Wagner,* 29 Cal. App. 363 [155 Pac. 649].) (Italics added.) The following cases, among others, deal alone with the degree of proof of the *corpus delicti* essential to warrant the *introduction in evidence* of the extrajudicial statements, admissions or confessions of the accused and are, therefore, of little value or assistance in determining the point here involved. (*People* v. *Simonsen,* 107 Cal. 345, 346 [40 Pac. 440]; *People* v. *Besold,* 154 Cal. 363, 367 [97 Pac. 871]; *People* v. *Frey,* 165 Cal. 140, 146 [131 Pac. 127]; *People* v. *Vertrees,* 169 Cal. 404, 408 [146 Pac. 890]; *People* v. *Quarcz,* 196 Cal. 404, [238 Pac. 363]; *People* v. *Garcia,* 196 Cal. 784 [238 Pac. 367].)

The instruction in question here does not involve the *admissibility* of such evidence, and, as already indicated, the foregoing line of cases are therefore not in point. The refused instruction if given would have precluded the jury, after the introduction in evidence of the extrajudicial statements, admissions or confessions of the appellant upon a *prima facie* showing of the *corpus delicti* by evidence *aliunde,* from considering such evidence "for any purpose" until the *corpus delicti* had been established to a moral certainty and beyond a reasonable doubt by such evidence *aliunde.*

Research has revealed that the cases passing upon the degree of proof of the *corpus delicti* necessary before the jury may consider the extrajudicial statements, admissions or confessions of a defendant are not as numerous as the cases involving the measure of proof essential before such evidence may properly be admitted. The following cases

may throw some light on the first question which is here involved:

Though the case of *People* v. *Jones,* 123 Cal. 65, 68 [55 Pac. 698, 700], was concerned primarily with the question whether or not the *corpus delicti* of the offense therein charged had been sufficiently proved to *admit* the extrajudicial statements, admissions or confessions of the accused, nevertheless, the court, apparently with approval, quoted the following: "Mr. Justice Clifford, commenting upon the language used in Greenleaf on Evidence said: 'Considering the language employed by that author, it is somewhat doubtful how far he would carry the doctrine; and, if it is to the extent that the *corpus delicti* must be *fully proved independently of the confession,* we are not prepared to adopt it, as in that view the admission of the confession would be useless except to prove the agency of the accused, and would operate as an exclusion of the confession for any purpose; whereas, if freely and voluntarily made, it is clearly admissible as evidence in support of *any* element in the charge to which it applies. Full proof of the body of the crime, the *corpus delicti,* independently of the confession, is not required, says Nelson, C. L., in *People* v. *Badgley,* 16 Wend. (N. Y.) 59, by any of the cases; and in many of them slight corroborating facts were held sufficient.' (*United States* v. *Williams,* 1 Cliff. 5, 24 [Fed. Cas. No. 16,707].)" (Italics added.)

*People* v. *Hatch,* 163 Cal. 368, 375 [125 Pac. 907], contains this pertinent declaration: "It is claimed that the *corpus delicti* was not proved by evidence outside of the declarations and admissions of defendant. It must be remembered that the rule does not require that the evidence, other than the admissions and declarations of defendant, establish the commission of the offense beyond all reasonable doubt. (*People* v. *Jones,* 123 Cal. 65 [55 Pac. 698]; *People* v. *Ward,* 134 Cal. 306 [66 Pac. 372]; *People* v. *Rowland,* 12 Cal. App. 7 [106 Pac. 429].) We are satisfied that the record presents substantial and sufficient evidence beside the admissions and declarations of the defendant to establish the commission of the crime charged."

The last case above cited, *People* v. *Rowland,* 12 Cal. App. 7 [106 Pac. 429], also involved the question of the admissibility of the accused's extrajudicial statements, admissions, or confessions, but the court there declared: "It is,

of course, a well-established rule of law that the confession or extrajudicial admissions of a party accused of crime cannot be considered for the purpose of proving the *corpus delicti,* or, in other words, of proving the elements necessary to constitute the crime with which he is charged. . . . But this rule has never been so far extended in its scope or application as to require the elements or the body of the crime to be proved beyond a reasonable doubt before the admissions or confessions may be received and *considered* as evidence.'' (Italics ours.) At first blush the two sentences of this quotation may seem inconsistent, but in view of the express declaration in the latter and the fact that the court was there considering whether or not the *corpus delicti* had been sufficiently proved to *admit* the accused's extrajudicial statements, it must be held that the first quoted sentence was dealing with the *kind* of proof necessary to sufficiently establish the *corpus delicti* in order to *admit* such extrajudicial statements, admissions or confessions—the point involved in that case.

The case of *People* v. *Hatch,* 13 Cal. App. 521, 531 [109 Pac. 1097, 1101] , is decidedly in point on the question here involved. An instruction almost identical with the one requested and refused in the instant case was likewise refused in that case and the appellate court held the refusal to be proper. A hearing was denied in the supreme court. The instruction in *People* v. *Hatch, supra,* read: ''In determining whether or not a crime has been committed in this case, apart from who committed it, you must not consider any admission or statement of the defendant; you must carefully exclude from your minds any and every statement made or alleged to be made by the defendant, when you come to consider whether a crime has been committed; and on that question you must look exclusively to the other evidence in the case. If the other evidence in the case does not show the commission of the crime charged beyond a reasonable doubt, then the defendant must be acquitted, notwithstanding his statements or admissions, if any. In other words, the law prohibits a conviction of crime solely upon the statements or admissions of the defendant.'' The district court of appeal declared: ''The court refused to give this instruction, and was justified in so doing. The vice of the instruction is that it requires that the *corpus delicti be proved beyond any reasonable doubt* before extrajudicial

statements or admissions of defendant may be considered at all. This is not the law. The correct rule is laid down in *People* v. *Jones,* 123 Cal. 56 [65 Pac. 698]. While it is true that there must be some proof of the body of the crime before extrajudicial statements or admissions of the defendant may be considered, it is not required that such proof shall go to the extent of establishing the crime *beyond all reasonable doubt.*"

The case of *People* v. *Gonzales,* 72 Cal. App. 626 [240 Pac. 291], concerned the question of *admissibility* of such evidence and while turning upon the failure of the prosecution to establish *prima facie* the *corpus delicti* by evidence *aliunde* before the admission into evidence of the extrajudicial statements, admissions, or confessions of the accused, nevertheless, the following excerpt from that opinion passes upon the identical point we have under consideration here: "The proof of the *corpus delicti* which must be produced before admissions or confessions of the defendant may be allowed to be put in evidence need not be sufficient to satisfy the minds of the jurors beyond a reasonable doubt of the *corpus delicti*. It is sufficient if the preliminary proof be of a substantial character tending to establish the *corpus delicti*. . . . *Such substantial evidence may be corroborated and strengthened by admissions and confessions of the defendant, and the proof beyond a reasonable doubt required by the law thus supplied.* . . . " (Italics added.) (See, also, *People* v. *Roganovich and Duzich* (Cal. App.), 246 Pac. 132.)

It is apparent from this review of the cases that the general trend of authority has been to hold that upon *prima facie* proof of the *corpus delicti* the extrajudicial statements, admissions, or confessions of the accused may be *admitted* in evidence and having been so properly admitted they may, with the evidence aliunde, be considered by the jury in its determination whether or not all the elements of the crime and the connection therewith of the accused have been established to a moral certainty and beyond all reasonable doubt.

We have found only two cases which seem to be in conflict with this principle. It was held in *People* v. *Wagner,* 29 Cal. App. 363, 372 [155 Pac. 649, 653], that it was error to refuse to give an instruction similar to the one involved in the instant case and which stated that the jury must be "convinced from the evidence beyond a reasonable doubt

and to a moral certainty that a criminal homicide was in fact committed'' before they might consider the extrajudicial statements of the defendant. And there is language in *People* v. *Tapia,* 131 Cal. 647, 651–653 [69 Pac. 1001, 1005], taken from *Gray* v. *Commonwealth,* 101 Pa. 380 [47 Am. Rep. 733], which announces a similar rule. The trial court in the Tapia case stated in an opinion that it did not think the evidence sufficient to sustain the verdict. Manifestly, the trial court should have granted a new trial on that ground (*People* v. *Knutte,* 111 Cal. 453, 455 [44 Pac. 166]), but instead of doing so it erroneously stated that it doubted its authority to grant a new trial in such a situation and declared it would pass the question to the supreme court, which tribunal, of course, had no authority to determine the weight of the evidence. It was to obviate this situation and because the opinion of the trial court was no part of the record on appeal and could not, therefore, be considered that resort was had by the court to a strict appraisal of errors asserted to have occurred at the trial in order to secure a reversal of the judgment and order. The court said ''that this decision is based upon the very peculiar features of this case as above shown; and that in many cases the errors above noticed would not call for a reversal.'' The presence of these facts must therefore be regarded as tending to greatly weaken *People* v. *Tapia, supra,* as an authority on the point involved in the instant case. Furthermore, as indicated in the note to the text in 8 Cal. Jur., page 167, section 248, the case of *People* v. *Tapia, supra,* is at variance on this particular rule with the weight of authority in this state.

It may finally be said that the authorities are unanimous on the proposition that the *corpus delicti* is not required to be established to a moral certainty and beyond a reasonable doubt before the extrajudicial statements, admissions, or confessions of a defendant may be received in evidence— *prima facie* proof of the *corpus delicti* being sufficient for that purpose. And, with the exception of *People* v. *Tapia, supra,* and *People* v. *Wagner, supra,* the rule is likewise unanimously declared that it is *not* necessary that the jury in resolving the question of the guilt or innocence of a defendant upon all the evidence in the case should, before considering for any purpose the extrajudicial statements, admissions, or confessions of a defendant, be first satisfied to

a moral certainty and beyond a reasonable doubt that the *corpus delicti* has been established by evidence *aliunde.*

When the case is submitted for their verdict the jury may consider *all* the evidence in the case, including the extrajudicial statements, admissions or confessions of the accused, in determining whether or not all the elements of the offense charged and the connection therewith of the accused have been established to a moral certainty and beyond a reasonable doubt. If this were not the correct rule, proof of the extrajudicial statements, admissions, or confessions of the accused would have no utility except to connect him with the crime charged. The general rule is that unless evidence is admitted for a limited purpose it will be considered for every purpose. Any expressions in *People* v. *Tapia, supra,* and *People* v. *Wagner, supra,* to the contrary of what we have declared are at variance with the authorities and are not binding. It follows from the foregoing that the proposed instruction was erroneous and was, therefore, properly refused.

[5]   5. We cannot agree with appellant's contention that the oral instruction given to the jury pending its deliberations, caused or resulted in a "compromise" manslaughter verdict. This instruction, a written copy of which was also supplied to the jury upon request, merely told the jury, and correctly so, that they would be given ample time for deliberation and that, upon retiring to the jury-room, it would be better that they refrain from emphatic declarations of opinion and hold their minds "in a state of abeyance" so that they might "fully and freely interchange views with each other," it being "for the interests of the State and the benefit of the defendant, that a verdict should be returned."

The judgment and the order appealed from are, and each of them is, affirmed.

Richards, J., Shenk, J., Seawell, J., Lennon, J., and Waste, C. J., concurred.