[Crim. No. 241.   Fourth Appellate District.—March 28, 1933.]

THE PEOPLE, Respondent, v. ANN ELIZABETH BASHAM DURBOROW, Appellant.

616

Edgar G. Langford for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton for Respondent.

MARKS, J.—Appellant was convicted of murdering James Basham and was sentenced to imprisonment for life. She has appealed from the judgment and from the order denying her motion for new trial. She urges the following grounds for a reversal of the judgment: (1) That the trial court erred in admitting evidence of defendant's extra-judicial statements in the absence of proof of a *corpus delicti;* (2) that the evidence is insufficient to sustain the judgment; (3) that the trial court erred in its ruling upon certain objections to the admission of evidence at the trial; (4) that the district attorney was guilty of prejudicial misconduct *during the course* of the trial.

Appellant and James Basham were husband and wife on January 9, 1932, the date of his death. They had separated prior to that date and appellant was living in a small dwelling with William Gallagher Durborow and was known to some as Mrs. Gallagher. At about 1:30 o'clock in the morning of January 9, 1932, Basham and a friend went to this house, where they found appellant and Durborow. The three men consumed a quantity of alcoholic liquor, each drinking about the same amount and from the same containers. Interspersed with their drinking Basham and Durborow engaged in a series of fist fights which resulted in Basham receiving bruises on his face and head and a fractured cartilege in his nose. None of these injuries were serious enough to cause his death. When Basham was found dead at about 4 o'clock in the afternoon of January 9th, there was clotted blood of a normal color in his nostrils.

Durborow took Basham's friend in his automobile and drove away from the premises at about 6:30 o'clock in the morning, leaving appellant and Basham in the house. Appellant, clothed in a nightgown, was in the one bed in the house. Though a quantity of liquor had been consumed by the three men, and they were all intoxicated, they were all able to walk and to talk. The house was in confusion and disarray, as a result of the fighting, with furniture overturned and broken, cigarettes, ashes and matches scattered over the floor.

The dwelling contained but one bedroom. The bed stood with its head against the east wall of the room, the southeast corner of the bed flush against the frame of a door opening into a bathroom, and the northeast corner about ten inches from a gas jet which protruded out of the east wall. A gas stove, when in use, was connected with the jet by means of a hose which was of sufficient length to reach from the jet across the north half of the bed. There was one window in the south wall of the bedroom and another in the south wall of the bathroom which opened from the southeast corner of the bedroom.

At about 4 o'clock in the afternoon appellant called a neighbor, telling her Basham was dead. He was lying partly on his left side on the north side of the bed which was close to the gas jet and heater. The hose was disconnected from the jet and so loosely connected on to the heater

that it fell off when touched by a police officer. The door into the bathroom was open as were the two windows already mentioned. The house was clean and in order and appellant was neatly dressed with her hair combed. She was calm and collected. The flesh around one of her eyes was blackened. There was a depressed imprint on the pillow and south half of the bed and the bedclothes were thrown back from this portion of the bed. Basham was fully clothed except for his shoes, which had been removed. His legs were covered with the bedclothes. No gas jet was open and no gas was escaping in the house when others arrived.

An autopsy was performed on the body of Basham and an analysis made of his blood, the contents of his stomach, and some of his vital organs. As a result, the autopsy surgeon was of the opinion that death had occurred between 6 and 8 o'clock in the morning as a result of carbon monoxide poisoning from the inhalation of illuminating gas.

▮ Appellant's contention that her extrajudicial statements should not have been admitted because the *corpus delicti* had not been proven, cannot be supported. In a homicide case the *corpus delicti* is sufficiently established to permit the introduction of such statements where it is made to appear, by *prima facie* evidence only, that the deceased met his death by means of the unlawful act of another. It is not necessary in establishing the *corpus delicti* that the unlawful act be traced to the defendant. (*People* v. *Selby,* 198 Cal. 426 [245 Pac. 426]; *People* v. *Moreno,* 111 Cal. App. 52 [295 Pac. 50]; *People* v. *Murillo,* 119 Cal. App. 59 [5 Pac. (2d) 897].) It is highly improbable that Basham, after having inhaled a lethal quantity of illuminating gas, could arise from his bed, close the jet and then lay himself down to die. It is equally improbable that appellant, if the weight of her body had formed the depression in the bed and pillow, could lie beside her husband and inhale the same fumes that killed him and show no ill effects from the poison. There were but two people in the house. One or the other of them must have turned off the gas after Basham had inhaled a sufficient quantity to have caused his death.

▮ If what we have already said does not sufficiently dispose of the contention that the evidence is insufficient to sustain the judgment, it should suffice to add that when the police officer first took hold of the hose it gave off the dis-

tinct odor of illuminating gas which was also distinguishable in the clothes and from the lungs of Basham at the time of the inquest. It is apparent that the gas was turned on in the bedroom, then turned off after Basham had inhaled a sufficient quantity to produce death. The jury was entitled to consider the extrajudicial statements of appellant, many of which were proved to be false, and others unworthy of belief. It was entitled to consider the relations of the three parties involved, and consider a motive for the killing. Appellant had separated from her husband and was living with the man whom she married shortly after the homicide. Appellant benefited financially to some extent, the amount being undisclosed, from the death of her husband. She received one payment from the United States government and another from an insurance company. After Basham's death, and before she was charged with murder, she told one of her friends, ''I never killed anyone . . . If the . . . was here I would kill him,'' referring to her dead husband. There is sufficient evidence to support the verdict and judgment.

■ Under appellant's third specification of error she maintains that the trial court erred in overruling her objections to the introduction of her extrajudicial statements. Technically speaking, her contention is correct as some of these statements were admitted before the *corpus delicti* was proven. As the *corpus delicti* was afterwards proven, the objection goes to the order of proof, which in this state is committed to the discretion of the trial judge. (*People* v. *Watters,* 202 Cal. 154 [259 Pac. 442].) We find no sufficient abuse of discretion in admitting the evidence out of order to constitute prejudicial error.

■ Appellant asserts misconduct on the part of the district attorney in making statements during his argument and maintains they were in effect comments on her failure to testify. The district attorney promptly disavowed any such intention and the trial judge instructed the jury to disregard the statements. The error, if any, was thereby cured.

The judgment and the order appealed from are affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 11, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1933.