[Crim. No. 6426. Second Dist., Div. One. June 29, 1959.]

THE PEOPLE, Respondent, v. TONY GRACIA HERRERA et al., Defendants; DONALD GRANT BOOTH, Appellant.

Minsky, Garber & Rudof and B. W. Minsky for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman L. Epstein, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein appellant, together with defendants Herrera and Encisco, were accused of unlawfully having in their possession heroin, a narcotic, in violation of section 11500 of the Health and Safety Code, a felony. The information also alleged prior felony convictions of burglary and robbery suffered by appellant. A plea of not guilty was entered by appellant who also denied the prior convictions. Trial by jury was duly waived and the People's case was submitted on the transcript of the testimony adduced at the preliminary examination, with appellant reserving the right to offer evidence in his behalf. He was adjudged guilty as charged in the information (defendant Encisco was also found guilty while defendant Herrera was acquitted). As to appellant, the prior convictions were found to be true. His motion for a new trial was denied and he was sentenced to state prison. From the judgment of conviction, from the "sentence," and from the order denying his motion for a new trial, appellant prosecutes this appeal. ■ Since an appeal from the "sentence" is not authorized, the attempted appeal therefrom must be dismissed (*People* v. *Gallardo,* 41 Cal.2d 57, 60 [257 P.2d 29]).

We regard the following as a fair epitome of the evidence presented in this prosecution. On February 17, 1958, one Wally Fisher contacted Everett Jones, a Deputy Sheriff of Los Angeles County, attached to the Narcotics Detail, and told the latter that appellant had been talking to him about narcotics. On the afternoon of February 19, 1958, Deputy Sheriff Jones provided Fisher with $250 of county funds which had been dusted with fluorescent powder, and the serial numbers of which currency had been recorded. Deputy Jones observed Fisher enter a home on Maywood Avenue, north of Slauson, in Los Angeles. The appellant was observed entering the same home about 10 minutes thereafter. Later, the appellant was seen leaving the home. Deputy Jones observed appellant go to a lumber yard on the corner of Maywood Avenue and Slauson Boulevard, enter a pickup truck, and drive to a house located at 7120 Miles Avenue in Huntington Park. Appellant entered this house.

At approximately 9:17 p. m. Deputy Jones observed a 1957 white convertible pull up across the street from this house. There were two persons seated in this vehicle. The driver, one Victor Armendo Encisco, codefendant with appellant in the trial below, got out of the car and entered the house. Approximately five minutes later appellant and Encisco were seen to leave the house, enter the car Encisco had been driving, and drive away. The car was followed by Deputy Jones and Deputy Frank Vacio.

The car was followed south on Miles Avenue, thence east on Florence Avenue for about two and one-half blocks, at which point it was seen to turn around and drive into a gasoline service station on Florence Avenue and Alameda Boulevard. The car was parked next to a telephone booth in the service station. The three occupants alighted and "milled around" the area. Approximately 15 minutes later the three reentered the car and drove away. The car was followed to the corner of Firestone and Alameda Boulevards where it stopped. Two of the occupants alighted from the vehicle including one Avila. Avila and another person in the area were seen close to each other. Appellant testified that on Avila's returning to the car, appellant asked him if he had obtained the narcotics. Avila answered that he had. Appellant stated that he then gave Avila the $250 he had received from Fisher.

The car was next observed by Deputies Jones and Vacio and a Deputy Smith as it pulled up in front of the house at 7120 Miles Avenue. This was approximately one hour and fifteen minutes after the deputies had last seen it.

As appellant was alighting from the vehicle, he was observed to lean over and make a "throwing motion under the side of the car." Shortly thereafter, Deputy Jones walked to the passenger side of the car and picked up a condom from the street under the car. A chemist, whose expert qualifications were stipulated to, testified that the condom contained heroin. Appellant, defendant Encisco, who was driving the car, and Avila, another codefendant with appellant at the preliminary examination though not present thereat, were placed under arrest.

An examination of the hands of appellant, Encisco and Avila under a quartz light indicated the presence of fluorescent powder. No part of the $250, given Fisher by Deputy Jones, was found in their possession.

In a conversation with Deputy Jones at the sheriff's station, appellant admitted placing the condom under the car as he

alighted. He stated that it had been received on the corner of Manchester and Alameda Boulevards. These statements were freely and voluntarily made.

Sworn as a witness in his own behalf, appellant testified that he had known the informant Fisher for some time, that the latter owned a boat business across the street from where appellant worked at a lumber yard. That prior to the date here in question, Mr. Fisher had asked appellant if he could obtain a typewriter for him, and had asked appellant ". . . if he (appellant) could get him (Fisher) different things, such as white walls and different items." Appellant further testified that the question of narcotics was first brought up by Fisher about three weeks prior to February 19 at Fisher's place of business. Fisher asked appellant if he could buy Fisher some narcotics. Appellant replied that he could not.

For three weeks prior to appellant's arrest Fisher talked to him "(j)ust about every day" about narcotics. Fisher asked appellant "to make a buy for him," telling appellant that he had $250 for the purchase and a man who "wanted to buy narcotics regular." On February 19 Fisher gave appellant $250 and again asked him to try and obtain some narcotics. Fisher also told appellant that he knew the latter was an exconvict. Finally, appellant agreed to try to obtain some narcotics for Fisher.

With regard to his activity in the instant case, appellant testified:

"Q. (Mr. Finnerty, Deputy District Attorney): Now, let me make sure that I understand what you are saying to the Court. Are you telling the judge that you had no notion of dealing in narcotics at all until you met this Willie Fisher; is that right?

"A. That's right.

"Q. Then Willie Fisher planted a seed, or an idea, in your mind and you carried out this narcotic buy after he had planted the idea in your mind; is that it?

"A. Yes, sir, that's about exactly it.

"Q. Now, after this idea of— What was there in it for you if you went along with getting some narcotics for Willie Fisher?

"A. Actually, I was just trying to get him off my back. He kept coming over there to the lumber yard every day and he asked me every day for almost three weeks.

"Q. This man, who apparently knew you were an ex-convict, had been pestering you to deal in narcotics, and in order to put a stop to this pestering you decided that you would get some for him; is that it?

"A. Yes, sir."

When questioned as to how he knew ". . . where or how to go about getting them (narcotics)," after he had decided to procure some for Mr. Fisher, appellant replied, "I didn't, at first . . . I just asked a couple of people . . . I asked a few people and I couldn't find anybody with any, and I just finally ran into somebody that could . . . I knew Ernie (Avila) before." When asked, "Then, after you heard that maybe Ernie could do something for you, why you called him up?" appellant answered, "Yes."

The sole ground urged by appellant for a reversal of the judgment and order herein is that the court erred in adjudging him guilty because the evidence, as a matter of law, clearly established the defense of entrapment.

The law of entrapment was defined by this court in *People* v. *Schwartz,* 109 Cal.App.2d 450, 454, 455 [240 P.2d 1024], as follows:

"Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. In other words, persuasion or allurement must be utilized to entrap. (*People* v. *Hall,* 133 Cal.App. 40, 45 [23 P.2d 783].)"

It is firmly established, however, that: ". . . if the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. . . . If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment." (*People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521] and cases therein cited.)

It is our understanding of the law that the defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is being prosecuted, for, as was stated by this court in *People* v. *Schwartz, supra,* page 455: "It is not the entrapment of a criminal upon which the law frowns, but the

seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ■ Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inferences of unlawful entrapment (citing cases)." ■ In other words, where a law enforcement officer, or his agent, merely provides "the occasion for one engaged in illegal activities to ply his trade" there can be no unlawful entrapment (*People* v. *Ramos,* 146 Cal.App.2d 110, 112, 113 [303 P.2d 783]).

■ Appellant concedes, ". . . that where there is a conflict in the evidence as to whether there was an entrapment, the conflict will be resolved in favor of the trial court's decision . . . ." ■ In the case at bar there is a direct conflict. During the cross-examination of Deputy Sheriff Jones there was testimony that appellant "had been talking to him (Fisher) about narcotics," which is directly contrary to appellant's testimony that Fisher made the approach to him "that he had this guy that wanted to buy some narcotics," and that appellant told him, "I couldn't buy any." As was said, in *People* v. *Braddock, supra,* page 803, "Where the record shows a conflict in the evidence, the judgment will not be reversed."

Appellant urges that, "The lure or persuasion was that Fisher indicated to appellant that there would be large profits. Fisher knowing that appellant had a prior criminal record, exploited this weakness in appellant by originating this transaction and then persuading and luring him with the expectation of large profits. . . . Further, it is an obvious inference that appellant expected to share these large profits with Fisher in that when he was apprehended, he had only the narcotics and none of the money given him by Fisher which was obtained from the Police."

However, the evidence offered by the prosecution at the trial established that Mr. Fisher just informed the sheriff's office of conversations concerning narcotics between appellant and himself two days before appellant's arrest. Fisher was given $250 of county funds which had been dusted with fluorescent powder. Appellant gave these funds to one Avila on learning that Avila had obtained some narcotics. Shortly thereafter, appellant was seen throwing narcotics under an automobile immediately before his apprehension. The foregoing clearly supports the inference that appellant used the

$250 to buy and possess narcotics, in violation of section 11500 of the Health and Safety Code.

Had the trial court believed appellant's testimony the defense of entrapment might well have been established. However, it is inherent in the decision rendered that the trier of facts did not believe appellant's version of the transaction. And whether unlawful entrapment is established in a given case is a question of fact for the duly constituted arbiter of the facts, who is the sole judge of the credibility of witnesses and the intrinsic value of the evidence (*People* v. *Gutierrez,* 128 Cal.App.2d 387, 390 [275 P.2d 65]). An appellate tribunal will not draw an inference contrary to that drawn by the trial court on this question if there is sufficient substantial evidence to support the latter's determination (*People* v. *Braddock, supra,* p. 803).

In the instant case, the trial court could reasonably infer that the formation of the intent and purpose to violate the law existed before the officers became aware of the situation through the information furnished by the aforesaid Mr. Fisher, and that the arrangements made by the officers were designed only to apprehend appellant in the furtherance of his criminal enterprise (*Stein* v. *United States,* 166 F.2d 851; *People* v. *Cherry,* 39 Cal.App.2d 149, 152 [102 P.2d 546]).

Appellant's final contention that the failure of the prosecution to call the decoy, Mr. Fisher, as a witness leads "to the only inference that if Mr. Fisher would have testified, he would have corroborated appellant," is unavailing. The record contains no evidence or showing of a *wilful* suppression of evidence as required by subdivision 5 of section 1963 of the Code of Civil Procedure, which provides that it is to be rebuttably presumed, "5. That evidence *wilfully suppressed* would be adverse if produced." In *Estate of Moore,* 180 Cal. 570, 585, 586 [182 P. 285], wherein the trial court gave the familiar instruction with respect to the presumption of law that evidence wilfully suppressed would be adverse if produced, the Supreme Court said, "This was error because the record fails to disclose any instance of suppression of evidence or anything that could be properly construed as such withholding of facts in defendant's possession."

Why Mr. Fisher was not subpoenaed by the prosecution does not appear. While this was a matter that could properly be argued to the trial judge ". . . it is entitled to but little consideration on appeal" (*People* v. *Burnette,* 39 Cal.App.2d 215, 223, 224 [102 P.2d 799]) and to this might be added the

observation that appellant could have subpoenaed Mr. Fisher had he desired.

The unauthorized appeal from the "sentence" is dismissed. The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.