[Crim. No. 7854.   Second Dist., Div. Two.   Mar. 13, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GURILDER McKINLEY, Defendant and Appellant.

Gurilder McKinley, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

FOX, P. J.—In an indictment, defendant was charged in one count with violating section 11531, Health and Safety Code (selling, etc. marijuana), and in two additional counts with violating section 11501, Health and Safety Code (selling heroin). He was found guilty as charged on each count by a jury and sentenced to the state prison for the term prescribed by law on each count, the sentences, however, to run concurrently. Defendant has appealed.

Defendant was represented in the trial court by the public defender. Defendant filed his notice of appeal in propria persona. He later filed application for appointment of counsel to represent him on appeal. Since the public defender had represented defendant at the trial, this court advised him that defendant had appealed and inquired whether ''in his opinion, the appeal will or might reasonably be expected to result in the reversal or modification of the judgment of conviction'' and whether his office would handle the appeal. (See Gov. Code, § 27706, subd. (a).)

The public defender replied that ''in the opinion of this office there is no merit in the appeal'' and therefore declined to represent defendant on the appeal.

We then examined the record and determined that appointment of counsel ''would be neither advantageous to the defendant nor helpful to this court,'' and therefore denied the application, notified the defendant thereof and extended his time to October 9, 1961, within which to file his opening brief.

Defendant tendered for filing a handwritten opening brief, portions of which were virtually illegible. This document was returned to defendant by the clerk of this court because of his noncompliance with the Rules on Appeal and his attention was directed to rule 15(b) and (c), rule 40(i) and (l) and rule 46. No brief has been filed.

With respect to the count involving marijuana, Officer Johnson of the Los Angeles Police Department testified that in October 1960 he was working as an undercover narcotics agent; that he met defendant on October 26 at a doughnut shop at 5th and Main Streets in Los Angeles; that their conversation drifted around to narcotics and he said to defendant that he was looking for some ''stuff.'' Defendant stated, ''Maybe later on I might know where you can get some.'' As he left, Officer Johnson indicated he would be back later. He returned to the doughnut shop the next afternoon at approximately 1:30 where he again met defendant, who after some preliminary conversation, inquired if he still wanted some ''stuff.'' Johnson said, ''Yes.'' They then went to the officer's car and defendant directed the officer to drive to 4359 Britton Avenue, where defendant introduced Johnson to Kenzy Philpot (who was a codefendant as to this count but who is not involved in this appeal). Defendant asked Philpot if he had any ''pot'' (marijuana), to which Philpot replied, ''I have only two joints [cigarettes] now,'' but he expected to get an additional supply soon because a party had already

gone to pick it up. Philpot handed Officer Johnson a brown paper cigarette containing a green leafy substance, which proved to be marijuana, and suggested that he try it. The officer excused himself saying he would try it later on. The officer remained a short time and then left with defendant whom he dropped off at 6th and Los Angeles Streets.

Later, Officer Johnson wrote a summary of this transaction which included the foregoing evidence and read it to defendant, who said ''Yes, that's what happened.''

On January 25, 1961 at approximately 1 p. m. Officer Jones of the Los Angeles Police Department, who was also working as an undercover man in the Narcotics Division, met defendant, whom he had seen some three weeks previously, at the same doughnut shop. He inquired if defendant could score a couple of caps of smack (heroin) for him. Defendant said ''No,'' explaining that his connection was at the race track. Approximately an hour later, defendant called Officer Jones over to where he and Officer Calhoun were seated together. He then asked Jones, ''Do you still want some stuff''; Jones said, ''Yes.'' Defendant then said that ''this guy [referring to Officer Calhoun] wants to score too and I might be able to do something over at Joe Bell's place on 5th Street.'' Defendant and the two officers then left in Officer Calhoun's car for Bell's place, being directed there by defendant. They parked around the corner just off 5th Street where Jones handed the defendant ten dollars and said, ''I want a ten dollar balloon.'' Officer Calhoun also handed some money to defendant, stating the quantity that he desired. Defendant left the car telling the officers to wait there. He returned in about five minutes or so, reentered the car and handed Jones a red balloon and asked him to examine its contents to see if it was good stuff. It was heroin as per his order. Defendant then got out of the car stating that he was going to get Officer Calhoun's stuff. Upon his return he handed Calhoun a package which turned out to be a capsule of heroin, for which Calhoun had paid $3.50.

The defense to the marijuana charge is that neither McKinley nor his codefendant in this count, Philpot, sold or gave Officer Johnson any marijuana cigarette. Rather it is claimed that Johnson had a couple of marijuana cigarettes when he arrived, that he lighted one and offered to share it with defendants but that defendant McKinley declined to smoke it.

The defense to the heroin transactions is that McKinley did not make any sale of heroin to either of the officers, that he simply accompanied them in Calhoun's car to the vicinity of

Joe Bell's place where they found some seven people assembled outside, that defendant picked out one of the group who from his appearance defendant suspected as being a user, and said to him ''I have some friends of mine and they said they would like to get some dope''; that he had nothing further to do with the heroin transactions.

As to the heroin transactions, it is apparent that the jury accepted the testimony of Jones and Calhoun as trustworthy and did not believe defendant's story, and that the evidence of the officers adequately supports the jury's verdict. ■■ It is likewise apparent that the jury accepted the testimony of Johnson relative to the marijuana count as worthy of credence and that it too adequately supports the jury's finding. The officer's testimony at the very least disclosed that McKinley aided and abetted his codefendant, Philpot, in furnishing a marijuana cigarette to the officer in violation of section 11531 and that he was therefore properly charged and convicted as a principal. (Pen. Code, § 31.) The jury's determination of these factual issues being supported by substantial evidence, is, of course, binding on appeal.

We have examined the clerk's transcript, from which it appears that the procedural aspects of the case were in all respects regular. The Reporter's transcript does not disclose any error in the reception or rejection of evidence. Examination of the instructions reveals that the jury was fully and fairly instructed, including instructions requested by counsel for defendant on the question of entrapment. We find no error in the record. There is no merit whatever in the appeal.

Judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.