[Crim. No. 11439.   Second Dist., Div. Four.   Aug. 31, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD PEREZ MORAGA, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien, Jackson L. Smith and Robert Shuken, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J. — In an indictment, defendant and a codefendant were charged in two counts with violation of section 11531 of the Health and Safety Code. Defendant was arraigned in superior court; a motion to set aside the indictment under section 995 of the Penal Code was made, continued, and later withdrawn. Defendant pled not guilty to both counts. After a trial by jury, a verdict of guilty as to count I was returned; a not guilty verdict was returned on count II. The court denied probation and ordered that defendant be committed to the Youth Authority. Defendant appeals.

▮▮▮ Undercover narcotics agent, Edward Noriega, in the presence of Freddy Bustillo, a paid informer, had a conversation with defendant while standing in front of a barber shop. The officer asked defendant if he had any marijuana. Defendant replied that he did not, but that he knew where he could obtain it. Defendant got into the state vehicle and directed Noriega to drive to the Colonia to locate a person named Connie who always had marijuana on him. Noriega testified that the defendant stated that he would start dealing in marijuana when he finished the barber's exam, and that he had a connection who could obtain marijuana. The officer also stated that defendant had a conversation with Bustillo about "going in with him" on the money so he could obtain one-half pound of marijuana. Defendant directed them to a house on Fir Street and Bustillo went to the door and returned with Wright. Defendant asked if he had any "cans" and Wright said he had only nine "joints" (marijuana cigarettes). Wright agreed to sell Noriega three marijuana cigarettes. Noriega marked them for identification. Defendant bought two cigarettes from Wright and gave one to Bustillo, which was marked for identification.

A police detective covering agent Noriega said he saw Noriega and the defendant drive to the Wright residence. William Arnold, a chemist employed by the State Narcotic Bureau, testified that the three cigarettes turned in for evidence by Noriega contained marijuana.

Defendant testified that, when asked by Noriega if he had marijuana or knew where he could get some, he replied that he did not know. Defendant claimed that it was Bustillo who suggested that they go to the house on Fir Street to find marijuana, and that it was Bustillo who brought Wright out to the car. Defendant joined in an argument about price and the officer bought three cigarettes and Bustillo bought one.

Defendant asserts that:

1. The defendant was entrapped.
2. The evidence is insufficient to support the verdict.
3. The instruction to the jury to bring in a verdict was prejudicial error.

I

■ Defendant's claim of entrapment must fail. If the criminal intent originates in the mind of the accused and the offense is completed, the fact that an opportunity was furnished or that the accused was aided in the commission of the crime is no defense. ■ The claim of entrapment must also fail where the officer uses no more persuasion than is necessary for an ordinary sale, and the accused is ready and willing to make the sale. ■ And, when an accused has a preexisting criminal intent, the fact that, when solicited by a decoy, he committed a crime raises no inference of unlawful entrapment. (*People* v. *Herrera* (1959) 171 Cal.App.2d 551 [340 P.2d 690].) In the case at bench the trial court could readily infer from Officer Noriega's testimony that the intent to deal in narcotics existed in the mind of the accused, and that the accused was merely aided in the commission of the crime. ■ An appellate court will not draw an inference contrary to that drawn by the trial court if there is sufficient substantial evidence to support the lower court (*People* v. *Herrera, supra*), and Officer Noriega's testimony (discussed in the facts above) provided such substantial evidence.

II

■ Defendant's argument that the evidence is insufficient to support the verdict seems to be based on the fact that defendant did not handle the marijuana and did not handle the money, and therefore his behavior was not sufficiently tied in with the commission of the crime. The case of *People* v. *McKinley* (1962) 201 Cal.App.2d 256 [19 Cal.Rptr. 898], presented a fact situation that is similar to the facts of the case at bench. In that case, Officer Johnson, working as an undercover narcotics agent, met the defendant in a donut shop. He told the defendant that he was looking for ''stuff'' (narcotics) and the defendant replied that he knew where he could get some. At another time the defendant directed the officer to drive to a place where the defendant introduced the officer to his codefendant. The codefendant said he had two joints and handed two marijuana cigarettes to the officer. The court held in the *McKinley* case that the evidence disclosed at the very least that defendant aided and abetted his codefendant in fur-

nishing a marijuana cigarette and therefore he was properly charged and convicted as a principal. In the case at bench, the court accepted Officer Noriega's version of what occurred; and, in accordance with that version, the evidence against defendant Moraga was as strong as the evidence against the defendant in the *McKinley* case. There is no merit to defendant's claim that the evidence is insufficient to support the verdict.

### III

■ Defendant objects to the following instruction as prejudicial: "The final test of the quality of your service will lie in the verdict which you return to the court, not in the opinions any of you may hold as you retire. Have in mind that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case."

Defendant suggests that such an instruction coerced the jury into reaching a verdict even if they were unable to agree on a verdict.

The language objected to, and which we have quoted above, cannot, however, be read alone. It is a part of a longer instruction (CALJIC No. 4), which was given in this case and which is regularly given to the jury at the close of criminal trials. It is entitled "How Jurors Should Approach Their Task," and, in its full text, reads as follows: "The attitude and conduct of jurors at the outset of their deliberations are a matter of considerable importance. It is rarely productive of good for a juror, upon entering the jury room, to make an emphatic expression of his opinion on the case or to announce a determination to stand for a particular verdict. When one does that at the outset, his sense of pride may be aroused, and he may hesitate to recede from an announced position if shown that it is fallacious. Remember that you are not partisans or advocates, but rather judges. The final test of the quality of your service will lie in the verdict which you return to the court, not in the opinions any of you may hold as you retire. Have in mind that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case. To that end, the court reminds you that in your deliberations in the jury room there can be no triumph excepting the ascertainment and declaration of the truth."

This instruction was immediately preceded by the giving of CALJIC No. 3, entitled "Individual Opinion Required," and

which reads as follows: "The People and the defendant both are entitled to the individual opinion of each juror. It is the duty of each of you, after considering all the evidence in the case, to determine, if possible, the question of the guilt or innocence of the defendant. When you have reached a conclusion in that respect, you should not change it merely because one or more or all of your fellow jurors may have come to a different conclusion, or merely to bring about a unanimous verdict. However, each juror should freely and fairly discuss with his fellow jurors the evidence and the deductions to be drawn therefrom. If, after doing so, any juror should be satisfied that a conclusion first reached by him was wrong, he unhesitatingly should abandon that original opinion and render his verdict according to his final decision."

When these two instructions are read together they clearly rebut any idea that the jury was told that their duty was to arrive at a verdict of some sort.

The situation here is far different from that which exists where, after a jury has deliberated for some time, they are recalled and the court seeks to induce a verdict. It was in the latter context that the supplemental instruction,[1] discussed and condemned in *People* v. *Baumgartner* (1958) 166 Cal. App.2d 103 [332 P.2d 366], was given. And even where the challenged instruction is given after deliberations have proceeded for some time, it will not necessarily be regarded as coercive if it merely urges on a jury the importance of giving reasonable consideration to the views of others. (*People* v. *Walker* (1952) 112 Cal.App.2d 462 [246 P.2d 1009].)

Defendant particularly relies on the case of *People* v. *Watson* (1913) 165 Cal. 645, 654 [133 P. 298]. The instructions in that case were: " 'To vote time after time in accordance with the first vote cast, and not try to arrive at a verdict is to deliberately set aside the oath you took on being accepted as jurors, to wit: That you would return a verdict in accordance with the testimony delivered in the case. This, each one of you can do and do no violence to your conscience as fairminded, conscientious and intelligent jurymen.' "

The instruction in the *Watson* case is clearly distinguishable

---

[1] "And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression upon the minds of so many men or women, equally honest, equally intelligent with himself or herself, and who have heard the same evidence with the same attention with an equal desire to arrive at the truth and under the sanction of the same oath." (*People* v. *Baumgartner* (1958) 166 Cal.App.2d 103, 106 [332 P.2d 366].)

from the instruction in the case at bench. In the *Watson* case, the court pointed out (at p. 654), "the jurors were told, in effect, that they were oathbound to reach some sort of a verdict —that to vote time after time in accordance with the first ballot cast was something most reprehensible—indeed that failure to try to reach a verdict would render the offending jurors guilty of a flagrant violation of their oaths." A fair reading of the instruction in the instant case indicates no such insistence by the judge that the jury bring in a verdict. Furthermore, the emphasis in the instruction at bar is on the importance of bringing in a *"just and proper* verdict," (italics added) and not in merely bringing "in a verdict."

It has been held that an instruction which stated, in part, that the jury should "fully and freely interchange views with each other" it being "for the interests of the state and the benefit of the defendant, that a verdict should be returned" was proper and not coercive. (*People* v. *Selby* (1926) 198 Cal. 426, 439 [245 P. 426].) The instruction herein questioned, particularly when coupled with its companion instruction above quoted, was certainly less open to objection than the one approved in *Selby*.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 26, 1966.