## BEN CLARK v. THE STATE.

*No. 3068.   Decided February 21.*

1. **Murder — Name of Deceased, Proof of.** — In a prosecution for murder the name of the deceased as alleged in the indictment must be proved by the State. This proof may be made by either positive or circumstantial evidence.

2. **Same.—Identity of Deceased.**—Where it is sought to prove that the deceased came to his death in such manner as to show a homicide, a much more stringent rule applies than when it is only sought to prove the name of the deceased.

3. **Same.—Evidence** held sufficient to prove the name of the deceased as alleged in the indictment, and also sufficient to support the conviction.

APPEAL from the Criminal District Court of Harris.   Tried below before Hon. C. L. Cleveland.

The indictment charges that defendant murdered Charles Williams, in Harris County, Texas, on the 1st day of December, 1890.   The conviction is for murder in the first degree, and the penalty assessed is death.

Several eye-witnesses to the homicide testified, substantially, that the deceased and another man had stopped at night near the house of Bill Harris, and had lighted a campfire.   Bill Harris, defendant, and several others, traveling together in a cart to Bill Harris's house, saw the campfire, and some of the party remarked that tramps were camping there.   Defendant thereupon said, "I wish I had my pistol, I would go out and stir up the sons-of-bitches," and inquired if there was a gun at Harris's house. He was told that there was, and when the party reached the house defendant went into the house, got a gun that was there (a musket), loaded it, and said he would stir up the sons-of-bitches.   He then went out with the gun to the campfire and shot one of the men there.   He then returned with the gun to Harris's house, and said, "I believe I have killed one of them sons-of-bitches."   He then went into the house, reloaded the gun, sat it down by the bed, lay down, and commenced singing.   Shortly thereafter he was arrested.   The deceased was shot with buckshot, the shot entering the side of his head and upper portion of his body, nearly tearing away the left side of his face, etc.   When the de-

ceased was shot, his companion, whose name was Blanks, ran off and reported the murder to the officers.

The defendant testified in his own behalf, and detailed the facts relating to the murder the same as the other witnesses, except that he substituted Bill Harris for himself as the murderer.

Other evidence in the case, in so far as it is material, is stated in the opinion.

There is no bill of exception in the record.

No brief for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was charged with and convicted for the murder of Charles Williams. The jury by their verdict assessed against appellant the death penalty, and judgment was entered in accordance with said verdict, and from said judgment he prosecutes his appeal to this court.

In his motion for a new trial he complains of two alleged errors. The first is based upon the supposed defect in the trial court's charge in instructing on the law with reference to the identity of the deceased.

The only question raised on this branch of the case is, was the deceased named Charles Williams? This had to be proved, because it was so alleged in the indictment, because he is named in the indictment as the party killed.

That appellant killed the deceased is fully proved.

The testimony fully proves, as we view the facts, that the deceased was named Charles Williams. Pruett testified that "Blanks said, 'I met the old man, the deceased, who was peddling some kind of preparation to mend glassware, at the campfire, and we agreed to pass the night together. We made the fire near the house of Harris, and had talked sometime until after dark, he having made me a proposition to travel with him in the sale of his preparation, amongst other things, until growing tired we lay down to sleep. How long a time elapsed I do not know, but I was finally aroused by a voice, and on looking up saw a black man with a gun. The man said, "What are you doing there, you sons-of-bitches?" and as I was raising myself up the man fired. This shot killed deceased, who was lying near by. The shot entering the side of his head and upper portion of his body, nearly tearing away the whole of the left ear, and then entering the upper portion of the body, killed him.'" Further testifying this witness said: "From information received, and after investigation into the murder as an officer, I found the deceased to be Charles Williams. He was selling a preparation for mending glassware, and I have examined the preparation found in the effects of deceased at the scene of the kill-

ing and that presented in court by the witness Joseph Howe, and find them the same."

The above facts were also testified to by Ellis, sheriff of Harris County, as follows: "I testify the facts stated by Mr. Pruett, as therein detailed, are correct."

Joseph Howe said: "I live with Captain and Mrs. Christian, and while there a man came to the house selling a preparation to mend glassware, and during a conversation between him and Mrs. Christian he said his name was Charles Williams. This was a few days before the murder. The preparation taken from the valise, and said to belong to the dead man, exhibited in court by Sheriff Ellis and his deputy Pruett, has been examined by me and compared with some bought by Mrs. Christian and presented in court by me, and I find them identical. Since the murder I have not seen nor heard of the man Charles Williams. I did not see the dead body."

This is the testimony as to the identity of the body as being the body of Charles Williams. Lister v. The State, 1 Texas Ct. App., 739.

The court instructed the jury as to both degrees of murder, and, submitting each degree, charged the jury that they must believe that the defendant did kill Charles Williams. Again, he instructed the jury that they "are further charged that the identity of the deceased—that is to say, his name—may be proved by either positive or circumstantial evidence, or in part the one or the other, or both classes of evidence, by the testimony of credible witnesses. If by circumstances only, then the circumstances should be of a conclusive nature and tendency leading upon the whole to a satisfactory conclusion, and excluding any and every other reasonable hypothesis than that of the hypothesis to be established."

This is a fair presentation of the law applicable to this phase of the case. Willson's Crim. Stats., sec. 939. This is the rule even when it is sought to prove that the deceased came to his death in such manner as to show a homicide. In the latter case a much more stringent rule would apply than when it is only sought to prove the name of the deceased. The charge was sufficient and did not mislead the jury.

The second cause assigned for the new trial is based upon the alleged insufficiency of the evidence to support the conviction.

The evidence makes a most brutal and unnecessary killing. The deceased had retired for the night, and was aroused from his sleep by the appellant and shot to death. He was sleeping near his campfire in company with a companion. Appellant loaded a gun and said he "would stir up the sons-of-bitches." He was persuaded not to kill the "tramps," as he termed the deceased and his companion who were at the campfire, but did not heed the warning and persuasion. He went to the campfire, fired his gun, returned to the house from which he had gone, and remarked as he came up, "I believe I have killed one of them sons-of-bitches." He

then went into the house, reloaded the gun, sat it down by the bed, and commenced singing. He himself testified that Bill Harris did the shooting under the very state of facts that all the other witnesses testify that he, appellant, did the shooting. He also testified that Harris bought some shot and powder in Houston from Henry Henks. This is shown to be not true. These facts show a clear case of murder upon express malice, as understood under our statute. The jury were the judges of the facts. The charge as an entirety is fair and presents the law of the case.

We see no reason why the verdict should be set aside or the judgment disturbed, and it is therefore affirmed.

*Affirmed.*

Judges all present and concurring.