[Crim. No. 2013. First Appellate District, Division Two.—October 10, 1938.]

THE PEOPLE, Respondent, v. DONALD WILLIAM PAGE, Appellant.

Vincent W. Hallinan and Carey Van Fleet for Appellant.

U. S. Webb, Attorney-General, Wm. F. Cleary, Deputy Attorney-General, Earl Warren, District Attorney, Charles D. Wehr, Assistant District Attorney, and Stanley C. Smallwood, Deputy District Attorney, for Respondent.

NOURSE, P. J.—The defendant was convicted of murder in the second degree upon a trial with a jury. He has appealed from the judgment and from the order denying his motion for a new trial.

■ There is no question as to the sufficiency of the evidence to support the verdict. The defendant admitted the killing but claimed that it was accidental. The circumstantial evidence alone was sufficient to support the verdict. The statement of facts following is taken partly from the dying statement of the deceased, who was the sixteen-year-old son of the defendant. The father, son, and grandmother lived in an apartment consisting of a bedroom for each, a kitchen and living room. On Sunday afternoon, the 29th of August, 1937, the defendant went to his room to take a nap but was disturbed by the noise of some boys playing in the neighborhood. He gave one of them a medal which had been the property of his deceased wife, and which she had given to her son. When the latter returned to his home and found what his father had done, an altercation arose during which the father procured a "vigilante" stick with which he threatened his son. The grandmother came from her room and pleaded with the defendant. He then returned to his own bedroom and took a 45 caliber automatic from its holster which hung inside of the door. The grandmother saw this action and pulled the door shut. She called to her grandson to help her, but the boy told her to let his father come out—that he believed that he could calm him down. The defendant came through the door and, holding the gun about six inches from the boy's body, told him he "would spill his guts all over the floor". He immediately pulled the trigger, and the discharge of the gun passed through the boy's abdomen, struck the kitchen floor at a spot about fourteen feet to the rear, and lodged in the casement of the window of the grandmother's bedroom. The boy walked back to his bedroom and asked his grandmother to call a doctor. The defendant returned to his bedroom and showed no concern about his

son's condition. He did not appear until aroused by police officers who had been called by the doctor. The shooting occurred at 5 o'clock P. M. The boy was moved to a hospital about an hour later, where he gave a statement to the police in the presence of the doctor, his grandmother, and several nurses, and while he was being prepared for an operation. At 7 o'clock he was taken to the operating room and died soon thereafter. Before being removed to the operating room, and within a few minutes after giving his statement to the police, he told the doctor that he did not expect to recover.

The only explanation given by the defendant of the circumstances of the shooting is that he was showing his son the workings of the automatic and that it was accidentally discharged. The defendant had been for many years an officer in the United States Army and had reached the rank of captain. The automatic was one of the regulation type with which the defendant was fully familiar. His story, that he was demonstrating the workings of this loaded gun with the muzzle within six inches of the son's abdomen, was so fantastic that he has been compelled to rely upon purely technical claims of error. These we will consider in the order of presentation, confining the discussion to the three assigned in the opening brief. These are: Is it error (1) To introduce a dying declaration made outside the presence of the defendant without a proper foundation? (2) To admit hearsay under the pretense of "impeachment" and "refreshing the recollection" of the witness? (3) Was the misconduct of the district attorney such as to require a reversal?

█ (1) The asserted error in the admission of the statement of the deceased is based upon the claim that it was not shown to have been given in contemplation of impending death. For this purpose it is not necessary to show that the declarant expressed such belief. "It is enough if it satisfactorily appears in any mode that they were made under that sanction, whether it be directly proved by the express language of the declarant, or be inferred . . . from his conduct, or other circumstances of the case." (*People* v. *Sanchez*, 24 Cal. 17, 24.) Here every fact and circumstance proved supported the single inference that the statement was made under such belief, and this inference is supported by the direct evidence that he so stated within a few minutes after the statement to the police was completed, and by the testimony

of the attending physician as to his condition at the time.

■ Criticism is made of one line of the instructions which advised the jury that it was "at liberty" to disregard the dying declaration if not satisfied that it was made under a sense of impending death. *People* v. *Profumo*, 23 Cal. App. 376 [138 Pac. 109], is cited as holding such an instruction to be error—that the jury should be instructed that it must disregard the statement under such circumstances. The case is in point as to the error in the instruction given, but, as the court there held that it was not prejudicial, so we hold here. Taking all the instructions together, we find that the jury was advised that it must apply the test of reasonable doubt to the circumstances of the giving of this declaration, which, in many cases, has been held a severer test than the defendant was entitled to. But, as to the question of prejudice, every fact and circumstance proved beyond question of a doubt that the declarant was in contemplation of death throughout the giving of the declaration and for at least an hour before that time.

■ (2) The asserted error of the district attorney relates to the examination of the mother of the defendant, who was the only living eye-witness to the shooting, other than the defendant. On two occasions she had given full statements to the authorities giving all the details of the shooting and of the quarrel which led up to it. She testified to the same extent before the coroner's jury, and in the preliminary examination of the defendant. When called by the state at the trial she testified that she was in the kitchen and saw nothing, heard nothing. To refresh her recollection, portions of these statements and of her former testimony were read to her. But she could recall none of her testimony and none of the circumstances previously given in detail. The propriety of the procedure adopted by the district attorney is approved in *People* v. *Durrant*, 116 Cal. 179, 214 [48 Pac. 75]; *People* v. *Selby*, 198 Cal. 426, 431 [245 Pac. 426]; 27 Cal. Jur., p. 86.

■ This witness having repudiated all the material portions of her former testimony and statements, and having steadfastly declared that the references to it did not refresh her recollection of any of the circumstances of the shooting, the district attorney asked leave to impeach her upon the ground that he was taken by surprise. Counsel for defendant

denied the surprise and demanded that witnesses be called and proof made of that fact. In the course of his examination of the assistant district attorney, he brought out that on the previous day he had asked that witness to join him in the chambers of the trial judge and that he had there informed him that he had talked with the grandmother and learned that she would repudiate her former testimony. He then asked this witness if that had not convinced him that she would not testify as before and that he was not therefore taken by surprise. The assistant district attorney answered that he was nevertheless taken by surprise, that he believed that defendant's counsel was merely trying to bluff him out of calling the witness, and that Mr. Hallinan's statement that the witness would repudiate her former testimony ''did not indicate to me that there was any truth behind it''. Upon all the evidence taken on the question, the trial court ruled that it was satisfied that the district attorney was taken by surprise by the retractions of the witness, and that he was acting in good faith in so stating. There was no error in the ruling and nothing to support a different conclusion.

■ The testimony given by the witness at the trial was material, and we find neither error nor misconduct in the procedure followed by the district attorney to impeach her. The jury was properly instructed as to the limited use of the prior statements and testimony for purposes of impeachment and not as evidence of the facts contained therein.

■ The final assignment of error relates to the asserted misconduct of the district attorney. When the assistant district attorney was under examination by Mr. Hallinan regarding the meeting in the judge's chambers, he expressed his lack of accord with the examiner on the ethics of the profession and, when pressed for an explanation stated that he had not liked counsel's conduct in the case. No exception was taken to the remark and no request was made for an instruction. If there was any misconduct, it was invited.

■ In the same cross-examination, defendant's counsel asked the witness why he had gone into the judge's chambers with him. The answer was, ''I prefer not to state, but if you insist upon it I will.'' Counsel did insist, and the witness answered that a former counsel for defendant had previously asked him what plea he would take and that the

witness thought that Mr. Hallinan asked him into the chambers to discuss that matter. There is no misconduct here. When a witness is asked "why?" he may give his reasons whether they be founded upon fact, fiction, or mere suspicion.

█ The final assignment of misconduct relates to the cross-examination of the defendant regarding his army record. The defendant had testified at length as to his military service and had taken pains to build up an enviable reputation as an army officer. He had also testified that he was still a captain of the reserve corps. The cross-examination objected to related to proceedings before an army board and his discharge for misconduct. The whole subject-matter was opened by the defendant in his direct examination, and there was neither misconduct nor error in the cross-examination which was designed to impeach that testimony.

The judgment and the order are each affirmed.

Sturtevant, J., and Spence, J., concurred.