Rogers L. VISER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 38667.

Court of Criminal Appeals of Texas.

Dec. 15, 1965.

Otis Scruggs, Jr., Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Gene Miles, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is under Art. 802c Vernon's Ann.P.C., for the offense of murder without malice; the punishment, two years in the penitentiary.

The testimony of the state reveals that while the appellant, about 12:35 A.M., was driving a Chevrolet automobile south on Goliad Street, his automobile struck an Oldsmobile going west on Crockett Street, the impact occurring in the intersection of said streets. As a result of this impact, the Oldsmobile struck a Mercury, causing both cars to be turned upside down. There were stop signs on Goliad at the Crockett Street intersection. A search by the investigating officers failed to reveal any skid marks on the street immediately before the stop sign on Goliad at said intersection.

Officers Fain and Tilghman testified that they observed the appellant at the scene immediately after the collision and from his actions and conduct including the odor of alcohol on his body, they expressed the opinion that he was intoxicated. From a blood specimen voluntarily given by the appellant at the hospital, an analysis was made which showed an alcoholic content of 0.11 per cent. Chemist McDonald testified that in his opinion any person whose blood contained that per cent of alcohol would at the time the blood specimen was taken be intoxicated.

The appellant's written statement made to officer Chebret in accordance with the provisions of Art. 727 C.C.P., was introduced in evidence and it recites in part that he had been drinking beer before the collision, and that he was driving between 35 and 40 miles per hour * * * "as I approached the intersection of Goliad and Crockett I didn't see the stop sign until I was right upon it * * * and then I felt a terrific impact."

The deceased was driving the Oldsmobile which turned upside down crushing his skull and causing his death.

In the absence of the jury the court held a hearing on the voluntary nature of appellant's written statement. After the hearing the court made an independent finding in which he concluded that such statement was voluntarily made.

Testifying in his own behalf, the appellant admitted he was driving his car and had been drinking some beer but that he was not intoxicated; that he saw and stopped for the stop sign at the intersection of Goliad and Crockett, that he looked both to the right and left and not seeing cars drove forward, and then he first saw a car coming from his left at 50 or 60 miles per hour, that he stopped and was hit by the oncoming car, and was unconscious for a while. He further testified that at the hospital they told him to sign some papers which he did and they gave him a blood test, and later the officers wrote a statement which he signed at their direction but he did not understand it.

The jury resolved the issues of fact against the appellant and we conclude that the evidence is sufficient to support the conviction.

Error is urged in permitting Dr. Bucklin to testify from the reports and records of

the autopsy performed on the body of the deceased for the reason that he had no personal knowledge of the autopsy and such testimony was hearsay.

Dr. Bucklin testified that Dr. Jachimczyk was the Medical Examiner of Harris County, and he was the Associate Medical Examiner of Harris County, and among his duties he was the custodian of the records of the office of the Medical Examiner of Harris County, which included the reports filed and the records of autopsies performed; that he had obtained the records of the autopsy filed in the office of the Harris County Medical Examiner in the courthouse showing the autopsy performed on Anthony Arsizo Munguia, and had such records in his hand.

■ Over the objection that the report was hearsay because the autopsy was performed by Dr. Jachimczyk and the report was also made and signed by Dr. Jachimczyk, the report was admitted in evidence, but with the instruction that it was not to be exhibited before the jury.

The witness Bucklin read before the jury from the report only the findings of Dr. Jachimczyk, as shown by said record, that the cause of the death of the deceased, Anthony Arsizo Munguia was a crushed skull; and also the findings describing the tattoo marks on the body.

The records of the Medical Examiner were made public records by Art. 989a, C.C.P. The original records pertaining to the autopsy in question were here before the court in the possession of the witness, Dr. Bucklin. The portion of said record read to the jury by Dr. Bucklin was relevant and admissible in evidence.

■ It is contended that the body found at the scene of the accident was never established by competent evidence to be that of the deceased, Anthony A. Munguia, as alleged in the indictment.

Officer Chebret testified that he was at the scene within a few minutes after the accident; that a wrecker removed the Oldsmobile off the body; that he saw Deputy Medical Examiner Ismonde search the pockets of the deceased; that Ismonde found a wallet containing a driver's license and other identification cards which bore the name of Anthony A. Munguia, which he showed to him (Chebret).

Thomas Munguia testified that on July 13, he learned of the accident that had happened to his brother, Anthony A. Munguia, and later attended his funeral service; and that his brother had several tattoos on his arms.

The autopsy report showed the same type and number of tattoo marks at the same locations on the arms of the deceased as described by deceased's brother.

The appellant testified that he learned that the name of the man killed in the Oldsmobile was Anthony A. Munguia.

The facts and circumstances are sufficient to warrant the court's submission of the name of the deceased as Anthony A. Munguia, to the jury. Clark v. State, 29 Tex.App. 357, 16 S.W. 187.

It is insisted that the written statement of the appellant was not voluntarily made.

The appellant admitted signing the statement introduced in evidence but says the officer read the statement to him which he did not understand, and after asking him some questions, wrote out the statement and told him to sign it which he did; that he was then sick and hurting because of the accident; and that some of the statement was true but that part about the stop sign, the speed and that he saw the Oldsmobile overturned was incorrect.

■ The voluntary nature of appellant's written statement was properly submitted and resolved against him by the jury.

The judgment is affirmed.

Opinion approved by the Court.