**Jack M. MIROWITZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42368.**

Court of Criminal Appeals of Texas.

Dec. 17, 1969.

Rehearing Denied Feb. 18, 1970.

Fred Bruner, Sam Daugherty, William B. Perrin, Jr., Elihu Berwald, Dallas, for appellant.

Henry Wade, Dist. Atty., John Tolle, Malcolm Dade, Camille Elliott and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The offense is aggravated assault by an adult male upon a female; the punishment was assessed at a fine of $1,000 and confinement in jail for two years.

The sufficiency of the evidence is challenged. The prosecutrix testified that she was twenty-one years of age and a college student. She had been employed as an undercover agent by John Irvin, an investigator of the Texas State Board of Medical Examiners. She saw in the Dallas directory where Jack Mirowitz was advertised, among other things, as a Ph.D. and clinical psychologist dealing with marriage counseling, hypnosis, self-hypnosis, speed reading and emotional problems. After making an appointment, she went to the office in the Preston Shopping Center where the receptionist introduced the appellant as Dr. Mirowitz.

The prosecutrix pretended to have a headache. Mirowitz took her into another room where he requested that she get in the reclining chair, and he then asked who had treated her before and how she decided to choose him. She told him she picked the largest advertisement in the yellow pages and called for the appointment. When he asked if she had unusual dreams, she replied that there had been one recurring nightmare where some natives in Africa had captured her mother and would not release her. He then asked why she hated her mother.

His prescribed treatment for the headache was self-hypnosis. After some fifteen or twenty minutes of this treatment, he asked, among other things, if she ever had intercourse. She testified that her answer was not the truth, but she told him that she had intercourse once with a man who she thought she loved, became pregnant and had an abortion. When the first visit was concluded, she paid the receptionist $25.00, made another appointment and left.

Some thirteen days later, she went to his office and told him that his suggested elevator method of self-hypnosis had not helped. Again he had her get in the fully reclined chair and started another form of hypnosis or treatment. He got real close to her and after about ten minutes asked if she did not get hot and desire sex sometimes. He asked her to imagine that she was someone else and that she was looking in a mirror and saw herself in blue lace pants and bra, and then to imagine herself undressed.

During their conversation, she had told appellant that Kenny was the name of her boyfriend. He told her to think of him as if he were Kenny and to respond in the way she would respond to Kenny. Appellant acted as though he thought she was under hypnosis and told her to think ahead for

six months and of him as Kenny and they would be married and on their honeymoon in a cabin in the mountains. He then asked her to make love and she refused; he assured her it was all right because they were legally married.

In the meantime, appellant was getting more excited and she was scared. He asked her to kiss him, telling her that they were married, but she refused. He tried to kiss her and did, and at the same time put his hand on her breast. She tried to push him away from her, but this was difficult in the reclining chair. He forcefully kissed her again and shoved his hand completely under her panties. She then scratched him and told him to stop, and he then let her up. His hands were shaking and he appeared to be very excited and nervous. He led her into another room and told her to stay there until he returned, and he would teach her how to make love and enjoy it. As soon as she heard his office door close, she ran out another door to the parking lot where John Irvin was waiting. She testified that she was upset.

John Irvin testified that he hired the prosecutrix to ascertain if appellant was violating the Medical Practice Act. He had waited for her at the parking lot, and on the day of, and after, the second appointment, she came out of the building running. She was white, shaking, appeared to have tears in her eyes and was quite nervous for some fifteen or twenty minutes.

Appellant testified that he was fifty-two years of age and that he was a clinical psychologist. According to his testimony the prosecutrix brought up the subject of sex; that he did not kiss her, touch her breast or put his hand up her dress or under her panties. He testified that she had left his office after she had gone through a dream sequence about her headaches and went into the other room, and she never paid him for the second visit.

On cross-examination appellant testified that he had a Ph.D. in psychology from Burton College and Seminary in Colorado where he attended in 1958 through 1960. Upon further cross-examination, he testified that the school was not accredited, and that he had neither received a bachelor's degree nor a master's degree from an accredited school in the United States.

He later testified that the American Society of Clinical Hypnosis required an M.D., D.D.S., or Ph.D. or the equivalent from an accredited school for membership and they had accepted him on the basis of his experience.

In the first ground of error, complaint is made because the prosecuting attorney asked appellant on cross-examination if he were not a fraud. After being asked about an institute on hypnosis and a psychotherapy clinic that he had organized in 1958, appellant stated that the organization no longer existed. Then the following transpired:

"Q. (Mr. Tokoly, Assistant District Attorney) Isn't it a fact, sir, you are not a clinical psychologist at all, isn't it a fact you are a fraud?

"A. No—"

Appellant's counsel started to object and appellant stated: "—it is not." The objection was that he was being tried for aggravated assault, male upon a female. After the court ascertained that the objection was to the word "fraud" he instructed the jury not to consider the word "fraud" for any purpose. A motion for mistrial was overruled.

Appellant argues that the question asked was somewhat like injecting extraneous offenses into the case. In the present case there was no attempt to inject extraneous offenses. The fact that the prosecutor had just interrogated appellant about his degrees and his qualifications as a clinical psychologist would indicate that the reference was to appellant's qualifications.

■ This Court seldom reverses cases solely because of a question propounded to the defendant as a witness. To cause reversal the question must be obviously harm-

ful to the defendant. Sensabaugh v. State, Tex.Cr.App., 426 S.W.2d 224, and Mounts v. State, 148 Tex.Cr.R. 177, 185 S.W.2d 731. See Smith v. State, 141 Tex.Cr.R. 387, 148 S.W.2d 844, and Palmer v. State, 134 Tex.Cr.R. 390, 115 S.W.2d 641.

■ In light of the answer by appellant that he was not a fraud and the ruling of the court to disregard the question, it cannot be concluded that the asking of the question was reversible error.

The first ground of error is overruled.

■ In the second ground of error appellant contends that the court should have submitted a charge to acquit if the prosecutrix consented to the acts of appellant.

Appellant testified that he did not kiss the prosecutrix or place his hands on the breast or beneath her panties. She did not testify to anything that would show she consented. The evidence did not raise an issue of consent. No error is shown; the second ground of error is overruled.

In the third ground of error complaint is made that the court did not submit an instruction to the jury that if the prosecutrix was an accomplice, they could not convict upon her uncorroborated testimony.

■ Appellant cites several cases where the complainants consented to sodomy or indecent fondling where it was held that the complainants were accomplice witnesses. These cases are not in point, because in the present case there was no evidence of consent. The fact that prosecutrix told appellant that she had intercourse on a prior occasion does not show she consented and does not show that she was an accomplice witness. The third ground of error is overruled.

■ In the fourth ground of error appellant complains that the trial court refused to instruct the jury that if he had no intent to injure the prosecutrix to acquit him.

Jones v. State, 160 Tex.Cr.R. 315, 269 S.W.2d 399, cited by appellant, held it was not reversible error to refuse a requested charge to acquit if Jones placed his hand on the woman's arm and it caused her a sense of shame or other disagreeable emotion.

Appellant's theory here, as in the Jones case, was that he made no advances and no assault and not that he believed that his advances would be acceptable or that the assault upon her did not result in injury.

The court did not err in refusing the requested charge; the fourth ground of error is overruled.

■ In the fifth ground of error it is contended that reversible error was committed when the trial court permitted the State to introduce evidence that appellant's reputation for truth and veracity was bad.

After appellant had taken the stand and testified, Merrill Frazier, an attorney, and George Duffield Smith, General Manager of the Better Business Bureau of Dallas, testified that they had known appellant since 1959 and his reputtaion for truth and veracity was bad.

The general rule is found in 1 Branch's Ann.P.C.2d, Sec. 168, p. 170:

"When defendant takes the stand as a witness he is subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case, his failure to testify on a former trial or hearing, and the like."

In 62 Tex.Jur.2d, Sec. 282, p. 267, is found:

"In both civil and criminal cases a party may show that the reputation for truth and veracity of a material witness for the opposite party is bad. That show-

ing may be made where a party testifies as a witness in his own behalf, * * *"

See Taylor v. State, 108 Tex.Cr.R. 678, 2 S.W.2d 457, Hughes v. State, 92 Tex.Cr.R. 650, 245 S.W. 440, and Vol. 39, Texas Digest, Witnesses, 337(3).

No error is shown; the fifth ground of error is overruled.

■ Complaint is made in the sixth ground of error that the trial court erred in permitting the prosecutor to argue to the jury that if appellant had a defense it would be in the charge.

Stephen Tokoly, one of the prosecutors, argued that appellant's counsel did their best to attack the complaining witness, bcause they knew there was no legal defense based upon the evidence. He further argued:

"* * * There has not been one, single legal defense raised to the offense which this man committed. If there had, ladies and gentlemen, it would have been in the Judge's charge, and there is nothing in there. It's a plain, simple case—"

Counsel for appellant objected that this was improper argument. When the court inquired upon what grounds, counsel stated: "What is in the court's charge is not evidence." The objection was overruled.

It is not likely that the court's charge could have been construed by the jury as evidence.

Assuming that the argument was improper, it did not result in prejudice to appellant.

"The prosecutor's improper remarks or argument will result in a reversal, where it appears that they injured defendant. But not every improper remark of the prosecutor calls for reversal; a judgment will not be disturbed if the conduct was harmless, or did not prejudice defendant. * * *" 5 Tex.Jur.2d, Sec. 436, p. 657.

The sixth ground of error is overruled.

No reversible error is shown; the judgment is affirmed.