**Nancy Jane Owens MAHAFFEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43516.**

Court of Criminal Appeals of Texas.

May 5, 1971.

Rehearing Denied Sept. 23, 1971.

Second Rehearing Denied Nov. 9, 1971.

C. A. Droby, Jim Martin, Melvyn Carson Bruder, Dallas (on appeal only), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder without malice. The punishment was assessed by the jury at five years.

The record reflects that the appellant who was the manager of Suzie's Bar shot and killed Kenneth Dennis with a .22 caliber pistol.

Most of the State's testimony was from the witness Wayne Buchanan. He met Kenneth Dennis, the deceased, at a tavern, and they later went to Suzie's Bar and drank beer until the one o'clock a. m. closing time. The appellant asked Buchanan and Dennis to move from a table because it was reserved. Dennis did so but reluctantly. Buchanan also testified that Dennis became interested in an attractive girl and the appellant told him some three times to leave the girl alone. Apparently the attractive girl did not protest the attention that she was receiving from Dennis.

Appellant offered to return the cover charge to Dennis if he would leave, but he declined to do so. Some words passed between the appellant and Dennis throughout the evening. At closing time, Dennis did not want to leave. The appellant went behind the bar, came back with the pistol and shot Dennis while he was seated at a booth. He died some three days later.

The appellant testified about the difficulties that she had with the deceased in the bar and that at closing time Dennis was seated in the booth and refused to leave. After an exchange of profanities, she went behind the counter, sacked up the money, picked up the pistol and went to the booth, and when Dennis made a move to hit her, the gun was accidentally discharged.

Witnesses called by the appellant testified that she shot Dennis to keep him from hitting her.

The State's theory was that the appellant was jealous because Dennis was paying too much attention to her girlfriend.

In the first ground of error, complaint is made because the court permitted Dr. Dowdey to testify from an autopsy report which had been prepared by another doctor. It is contended that the testimony was hearsay and was in violation of Article I, Section 10 of the Texas Constitution, Vernon's Ann.St. and the Sixth and Fourteenth Amendments to the Constitution of the United States.

The autopsy report, prepared by Dr. Earl E. F. Rose, who had moved to Iowa, was identified by Betty Harrison, the custodian of the records at the Dallas County Medical Examiners Office. The report was admitted before the court but not before the jury. Dr. Dowdey did not participate in the autopsy, but from the report prepared by Dr. Rose, he testified that Dennis died as a result of injuries caused by the bullet.

In Viser v. State, Tex.Cr.App., 396 S.W. 2d 867, an associate medical examiner who was custodian of the records was permitted to testify from the record of the autopsy prepared by another doctor as to the cause of the death. This Court held that the testimony was admissible over the objection that the report was hearsay.

Article 49.25, Vernon's Ann.C.C.P., makes the records of the medical examiner public records.

Article 3731a, Vernon's Ann.Civ.St., provides that records may be admitted into evidence if the offering party has delivered a copy thereof to the adverse party within a reasonable time prior to trial.

Appellant now states that there is no showing in the record that compliance with the delivery of the copy to the adverse party had been made prior to the trial. There was no objection upon which this contention was made and no error is shown.

Appellant contends that Article 3737e, V.A.C.S., which permits memoranda made in the regular course of the business to be admitted into evidence, was not complied with. No objection upon these grounds was made at the time of the trial.

Recently, in Cuevas v. State, Tex.Cr.App., 456 S.W.2d 110, and in Burrell v. State, Tex.Cr.App., 446 S.W.2d 323, this Court reaffirmed the rule that doctors may testify from autopsy reports prepared by their predecessors where the latter are not available to testify in person.

The distinction in Viser v. State, supra, relied upon by appellant, that the custodian of the records testified from the report is not material.

The testimony of Dr. Dowdey was relevant and admissible in evidence.

The contention that Article 49.25, V.A.C.C.P., Article 3731a, V.A.C.S., and Article 3737e, V.A.C.S., as applied to the facts of this case as unconstitutional is overruled.

The first ground of error is overruled.

■ Next, it is contended that the evidence is insufficient to show that death was the result of any act of the appellant.

The testimony of all the witnesses, including the appellant, was that she shot Dennis.

Dr. Dowdey testified that he examined the autopsy report on 24-year-old Kenneth Dennis; that there was just one entrance hole in the right temple and that the missile was found in the cranial cavity and that the cause of death was a gunshot wound to the head and that the autopsy report showed that the cause of death was gunshot wound to the head.

Appellant relies upon Irving v. State, 67 Tex.Cr.R. 588, 150 S.W. 611. There the proof showed that Irving shot the deceased who was dead at the time of trial but there was no showing when he died or what caused his death.

In the present case the proof shows that Dennis died some three days after he was shot as a result of a gunshot wound. We hold that the evidence is sufficient to show the cause of death. See 4 Branch's Ann. P.C.2d, Sections 2025 and 2091. The second ground of error is overruled.

■ Complaint is made in the third ground of error because the court permitted the testimony of Dr. Dowdey that the finding of cause of death in the autopsy report was consistent with the descriptions of the body as set out in the report because it was hearsay. The witness testified from facts recited in the autopsy report. Based upon his own qualifications as a physician and pathologist, he was properly allowed to express an opinion as to the correctness of the cause of death as stated in the report. This Court held that it was proper for a pathologist to testify to his own expert opinion based upon the autopsy report made by another pathologist over the objection that it was hearsay. Neely v. State, Tex.Cr. App., 409 S.W.2d 552.

No error has been shown. The third ground of error is overruled.

■ Complaint is made in the fourth ground of error because of the trial court's refusal to grant a mistrial during the di-

rect examination of the witness Buchanan when the following transpired:

"Q. (By prosecutor) All right. Not going into the conversation, what occasioned your going to Suzie's Bar?

"A. We went to Suzie's Bar—he was going to show me a gay place."

At this point counsel for appellant objected, requested an instruction to the jury that they disregard the answer, which was given, and then asked for a mistrial, which was overruled.

Appellant assumes that the answer was clearly unresponsive to the question. When a witness is asked a "why" question, which the one at bar is, the witness may give his reasons whether they be founded upon fact, fiction or mere suspicion. See People v. Beasley, 163 Cal.App.2d 22, 328 P.2d 834, and People v. Page, 28 Cal.App.2d 642, 83 P.2d 77. Appellant should have objected at the time the question was asked, and not waited for the witness to respond.

In White v. State, Tex.Cr.App., 444 S.W.2d 921, and Smith v. State, Tex.Cr.App., 457 S.W.2d 58, this Court stated:

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. Wheeler v. State, Tex.Cr.App., 413 S.W.2d 705, 707; 5 Tex.Jur.2d, Sec. 437; McCormick and Ray, Texas Law of Evidence, Vol. 1, Sec. 29."

The above rule is applicable here. No reversible error is shown.

Ground of error number four is overruled.

In grounds of error number five and six it is contended that reversible error was committed when Buchanan was permitted to testify about what occurred at the bar immediately following the shooting and after the appellant had left over the objection that such was hearsay.

Buchanan testified that after the shot was fired, he solicited the aid of the people still in the bar, requesting them to call the police and an ambulance and that he heard "one tall man with an apron around his waist, and a heavy set woman" deny his request and one of them said, "Get the S.O.B. out of here." Buchanan then dragged Dennis outside where he obtained the assistance of a young man with "wavy black hair, slender and wearing woman's eye makeup," who told Buchanan, "Don't tell anyone that I helped you."

Assuming that this testimony was inadmissible, it was not such as would add to the evidence of guilt of the appellant or injure her. See 5 Tex.Jur.2d, Section 444, page 696.

No reversible error is shown. The fifth and sixth grounds of error are overruled.

Ground of error number seven relates to the court's failure to allow the appellant to cross-examine the witness Buchanan concerning the reputation of the deceased. Buchanan had testified that he had met the deceased for the first time on the day in question and at that time the deceased seemed to be quiet and subdued. On cross-examination the witness was asked whether his opinion of the deceased would be the same if he knew that the deceased's ex-wife had divorced him because of his cruel and violent temper and his propensity to act violently. The State's objection to this question was sustained.

The appellant contends that since the State elicited the testimony that the deceased was quiet and subdued during the night of the homicide, she should then have been permitted to cross-examine Buchanan on the basis that Buchanan had then become a

reputation or character witness. The testimony shows that the deceased and Buchanan had known each other for a period of only seven hours. Buchanan's testimony related only to the way that deceased acted at the time they were together, and he did not at any time testify that the reputation of the deceased was good. No error is shown.

Further, the reputation of the deceased was later shown by witnesses for the appellant and the testimony which appellant sought to interject into the trial by the cross-examination of Buchanan did come before the jury at a later time in the trial.

The seventh ground of error is overruled.

■ Appellant next asserts error in the trial court's failure to grant a mistrial after the State asked the appellant on cross-examination whether she was denying that she was a Lesbian. The trial court sustained the appellant's objection to the question, instructed the jury to disregard the question, and denied the appellant's motion for a mistrial.

It is the State's position that the question was asked of the appellant based on the theory that appellant had shot the deceased in a state of jealous rage because the deceased had been flirting with appellant's girlfriend. Outside the presence of the jury, the State argued that the question was proper in order that the appellant's testimony that the shooting was accidental could be refuted.

The record shows that while the appellant was testifying on cross-examination, the following transpired:

"Q. Now, isn't it a fact that you had known that he was flirting with Shari all night long?

"A. Shari wasn't even in there; it was Charlotte he had been bothering.

"Q. Charlotte, well, whichever one it was, which one of the two was your girl friend? Charlotte or Shari?

"A. Neither one of them was my girl friend.

"Q. Well, are you—

"A. I know her.

"Q. Are you denying that they were your girl friends or that you had girl friends?

"A. Well, I know what you are trying to get at, but it was not like that. I knew them from that bar.

" * * *

"Q. (By Mr. Sparling) Now, are you denying that you have girl friends?

"A. No, I have a lot of girl friends.

"Q. Are you denying that you are a Lesbian, a homosexual?"

An objection was sustained. A motion for mistrial was overruled.

Appellant cites Brown v. State, 168 Tex. Cr.R. 67, 323 S.W.2d 954. There the charge was for the possession of barbiturates and the State sought to show that the defendant was a homosexual. The questions propounded in Von Brown, or proof of the fact that he may have been a homosexual, would have offered nothing in support of the State's case.

In Fleming v. State, 172 Tex.Cr.R. 520, 360 S.W.2d 153, where the prosecution was for murder, this Court held, among other things, that the State could ask questions in an effort to show that the trouble arose as a result of appellant's homosexual tendencies. There the questions about homosexual activities were asked but it was never shown that Fleming was a homosexual.

The State in the present case had previously proved that the appellant was wearing no makeup and had her hair combed straight back behind her ears. She was wearing long pants and had on a man's shirt or blouse.

No attempt to show bad faith on the part of the prosecutor was made. The question

no doubt could have been framed in a better way. The mere asking the question under the circumstances of this case does not constitute reversible error.

Ground of error number eight is overruled.

■ Complaint is made in the ninth ground of error of the court's permitting the State to cross-examine the appellant about a prior misdemeanor conviction. The prosecutor asked appellant if she had not pled guilty to the "offense of city vagrancy morals in 1963." The appellant denied that she had so pled. The State did not attempt to introduce evidence to contradict her answer. Appellant does not contend that the question was asked in bad faith but merely that the conviction, if in fact it existed, was not available to the State to use to impeach the appellant.

The question as framed was not proper.[1] In Mirowitz v. State, Tex.Cr.App., 449 S.W.2d 475, it is stated that this Court seldom reverses cases solely because of a question propounded to the defendant as a witness.

In light of the answer given by the appellant, we hold that no reversible error has been shown.

■ In the tenth ground of error appellant complains because the court permitted the State to impeach her as a witness by showing a conviction for passing a worthless check under $50 in 1961. She objected on the grounds of remoteness. This case was tried in 1969. The rule is that the admission of prior convictions to impeach is usually within the discretion of the trial judge where the issue is remoteness. Recently, we held that an offense which occurred eight years prior to trial was not too remote to be used for impeachment. King v. State, Tex.Cr.App., 425 S.W.2d 356.

We find that no abuse of discretion has been shown.

■ In the eleventh ground of error, complaint is made of the trial court's refusal to allow the appellant to prove that the deceased was such a person as might reasonably be expected to execute a threat made.

It is contended that the proof should have been allowed under Article 1258, Vernon's Ann.P.C., which provides:

"Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the killing unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made. In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased. Such evidence shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made."

No one testified to any type of threat prior to the difficulty in the bar. One witness for the defense testified that Dennis said he would knock the "s___" out of the appellant. There was no evidence of a threat by Dennis to take the life or cause serious bodily injury to the appellant. The provisions of Article 1258, supra, do not apply. No error has been shown. The eleventh ground of error is overruled.

■ In the last ground of error, appellant complains of the trial court's allowing

1. It is proper to impeach a witness by asking if she has been convicted for vagrancy for being a prostitute. 1 Branch's Ann.P.C.2d, Section 191, page 212.

the State to elicit testimony from a police officer that the appellant refused to make statements and did not show any concern over the shooting of the deceased.

The police officer testified that he answered the call and went to Suzie's Bar and when he arrived there was a carload of people in front of the bar. He testified that the people were removed from the car and taken inside the bar and all sat down at a table. The police officers then attempted to elicit the details of the offense by asking questions of these people. The appellant was one of them. There were six people altogether, and all of them were questioned. The officer testified that at the time of the arrest, the appellant showed no sign of remorse.

The objections were sustained. The trial court ruled favorably to the appellant and no further ruling was asked. In the absence of a motion for mistrial, the appellant is in no position to complain. Hoover v. State, Tex.Cr.App., 449 S.W.2d 60.

The record contains no reversible error. The judgment is affirmed.

## OPINION

## ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

On rehearing appellant contends that, "because of the threats made to the appellant by the deceased immediately before the fatal shot was fired, the jury was entitled to know about the previous acts of misconduct and violence on deceased's part in order to determine who was the aggressor * * *." She relies upon our decisions in Lewis v. State, Tex.Cr.App., 463 S.W.2d 186, and in Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W.2d 875, to support her contention.

A careful analysis of these decisions demonstrates that appellant's reliance on the above cited cases is misplaced.

In Dempsey v. State, supra, the defendant was convicted of murder. At his trial, he pled self-defense and attempted to introduce evidence of previous acts of violence by deceased. This court held that the exclusion of such evidence by the trial court constituted reversible error. The decision in Dempsey v. State, supra, delineates the test for determining under what circumstances evidence of the deceased's violent character is admissible. First, before any evidence of deceased's character for violence becomes admissible, there must be evidence of some act of aggression by the deceased which an inquiry into his character would tend to explain. Second, the court promulgated two rules for determining the extent of the inquiry into character, delineating each according to the type of issues involved in the case:

(1) "If offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger, it must further appear that the acts of violence or misconduct were known to the defendant at the time of the homicide.

(2) "But if offered for the purpose of showing that the deceased was in fact the aggressor [not that the defendant thought the deceased was making or about to make an attack] the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide."

Both defendant's state of mind at the time of the event in question and the identity of the aggressor [whether deceased or defendant] were in issue, and this court held that evidence on both points was admissible.

The evidence excluded by the trial court in Lewis v. State, supra, dealt solely with the issue of determining the aggressor. The state's witness testified that she had observed the defendant strike the deceased with a knife during a quarrel between the

two. She had not seen the deceased attempt to strike the defendant. The defendant contended that the deceased had hit her with his fist, whereupon she stabbed him in self-defense. The issue to be resolved at the trial was whether the deceased or the defendant was the aggressor. Other than the defendant's uncorroborated statement, there was no evidence on this point. We held that the circumstances of that case placed it squarely within the second rule of the Dempsey test and that the excluded evidence was therefore admissible.

In the instant case, the fact that the deceased had attempted to strike the appellant with his hand was not in dispute. Three defense witnesses corroborated appellant's story on this point, and the state's witness testified that he had his back to the pair for a few moments just preceding the firing of the shot. That the deceased was the aggressor is therefore not in issue. What is in issue is whether, at the time of the shooting, the deceased's actions had placed appellant in such fear of her life or of sustaining serious bodily injury that the use of a deadly form to prevent the blow was justified. Art. 1258, V.A.P.C.

The first rule of Dempsey is therefore applicable; and under that rule, evidence of deceased's violent character which is not known by the defendant at the time of the transaction is not admissbile. The testimony which the trial court excluded in the instant case concerned matters which were unknown to appellant. The trial court's exclusion of such testimony was proper. Dempsey v. State, supra; West v. State, 154 Tex.Cr.R. 502, 229 S.W.2d 623.

To now sustain appellant's contention would be to destroy the distinction made in Dempsey v. State, supra. We are not prepared to reach such a result. The reputation or character of a deceased is not, in the usual case, a proper issue in a murder trial. The exception to the general rule applies only in a case where the defendant is claiming justifiable homicide under Art. 1258, V.A.P.C. Even in a ca'se of this type, we limit inquiry into this area to that aspect of the deceased's character which is legally relevant to the accused's defense. To hold otherwise would be to find our courts embroiled in determining whether the deceased was the type of person who deserved being killed. Such a determination is not within the province of our courts and is certainly not in accord with the laws of this state.

For the reasons stated, appellant's motion for rehearing is overruled.

MORRISON, Judge (dissenting).

In appellant's motion for rehearing, reliance is had principally upon Lewis v. State, Tex.Cr.App., 463 S.W.2d 186, and Dempsey v. State, 159 Tex.Cr.R. 602, 266 S.W. 2d 875. In Lewis v. State, supra, we held it reversible error to exclude evidence of prior acts of violence by the deceased, though unknown to the appellant, because such acts were admissible to show that the deceased was the aggressor. Lewis was based entirely upon Dempsey v. State, supra, wherein we said:

"The defense may offer testimony as to any specific act of violence or misconduct which evidences the violent character of the deceased under the following conditions:

"If offered for the purpose of showing the reasonableness of defendant's claim of apprehension of danger, it must further appear that the acts of violence or misconduct were known to the defendant at the time of the homicide.

"But if offered for the purpose of showing that the deceased was in fact the aggressor (not that the defendant thought the deceased was making or about to make an attack) the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide."

In each case it was held that before such evidence would be admissible it must be shown that at the time of the shooting the deceased was manifesting an intention to inflict violence on the appellant.

I return to the record before this Court. The deceased had been drinking at one bar before he went to Susie's Bar where he continued to drink. Appellant testified that she had received complaints and had difficulty with the deceased all evening and repeatedly offered to return his admission fee if he would leave. On one occasion the deceased got on the stage and tried to grab at a Go-Go dancer, and another time he tried to force his attention upon a young woman who was trying to go to the restroom. She stated that before the shooting, and just prior to the time that she armed herself, she asked the deceased to leave as it was closing time. The deceased replied, "You and nobody else is going to put me out of here." This was corroborated by the witness Lorena Huitt, who testified that the deceased said he would leave when he "got damned good and ready to."

The witness Betty Ann Kirkham testified that the deceased said, "There's no one here big enough to make me leave."

Appellant testified further that, also prior to arming herself, the deceased told her that he was going to "Kick the God damned f___ out of me." This statement was corroborated by Mrs. Huitt, who testified that the deceased said, "I'll knock the _____, you know, out of you."

Appellant testified that she then went behind the bar and made a futile effort to reach the police by telephone, armed herself with a pistol and picked up the day's receipts and went again to the table where the deceased was seated and again entreated him to leave. At this juncture, the deceased said, "I am going to knock the hell out of you." Simultaneously with such statement, appellant testified, the deceased swung at her. "When he swung up at me like that, I threw my arm up to block his arm." She further testified, "I was, you know, trying to block his arm off when he hit me, and I had the gun in my hand and when I swung my arm back like this, it went off." Mrs. Huitt corroborated the appellant when she testified, "And he [deceased] swung at Nancy [the appellant] or when he swung at Nancy she went to hit him back or something and then I guess the gun went off." Mrs. Kirkham further corroborated the appellant in these words: "He had come up to hit her, and she swung back and a shot went off."

With this as a background, I now discuss the evidence which the Court excluded over appellant's objection.

The witness Linda Stiles, deceased's former wife, testified that when the deceased would get drunk he would tear up his mother's bar, that he had a violent temper and he would beat her and her parents, that when he was drinking he had temper tantrums, and that the police frequently came to the home she had shared with the deceased.

Mrs. Louise Thyfault testified that the deceased was a nice, quiet person until he was drinking, that he had beaten her up and her husband when he was drinking, and that the deceased had been in jail in Amarillo numerous times for fighting in bars while he was drinking.

I have now concluded that the trial court fell into error in excluding this testimony. This Court has, prior to now, recognized two distinct instances in which evidence of specific acts of violence or misconduct which show the violent character of the deceased may be admitted; i. e., (1) to prove the reasonableness of the defendant's claim of apprehension of danger, or (2) to prove the deceased was the aggressor. The testimony was clearly admissible for this latter purpose, in conformity with our recent opinion in Lewis v. State, supra.

The majority apparently fails to recognize this second theory and disposes of

appellant's contention as though it had been asserted under condition (1), to prove the reasonableness of the defendant's claim of apprehension of danger. This is an incorrect application of a rule of evidence which has been clearly enunciated by this Court previously and which has heretofore been followed.

I respectfully dissent.

ONION, P. J., joins in this dissent.