Filed 3/4/24  P. v. Pellegrin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>CHRISTOPHER DEMECIO PELLEGRIN,<br><br>      Defendant and Appellant. | D083072<br><br><br>(Super. Ct. No. RIF1801051) |

APPEAL from a judgment of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge.  Affirmed.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Christopher Demecio Pellegrin of first degree murder (Pen. Code, § 187, subd. (a)) and unlawfully possessing a firearm (§ 29800, subd. (a)(1)), and found true the special circumstances that he (1) committed

the murder by intentionally discharging a firearm from a motor vehicle at a person outside the vehicle with the intent to inflict death (§ 190.2, subd. (a)(21)), and (2) personally and intentionally discharged a firearm proximately causing great bodily injury or death (§ 12022.53, subd. (d)).

On appeal, Christopher contends the trial court prejudicially erred by (1) admitting a witness's pretrial recorded interview of speculative statements and inadmissible hearsay, (2) admitting a second witness's speculative statements in response to leading questions, and (3) inadvertently revealing to the jury Christopher's prior felony conviction for conspiracy to possess for sale a controlled substance. He further argues the cumulative effect of these errors warrants reversal.

We conclude the trial court did not abuse its discretion by admitting the challenged testimony and, although we agree with Christopher that it was error to reveal his felony conviction to the jury, on this record, that error was harmless. Therefore, we affirm.

I.

Christopher was charged and tried with his brother, Jonathan Pellegrin, for the murder of Rolando Aguayo. The prosecution relied on the testimony of two eyewitnesses, M.P. and R.A.; a third defendant involved in Aguayo's murder, J.C.; a forensic pathologist; and several police officers and detectives. Video surveillance of the shooting resulting in Aguayo's death was admitted and played for the jury. Christopher neither called any witnesses nor testified.

The evidence at trial showed that on November 28, 2017, Christopher, Jonathan, and J.C. arranged to meet at Jonathan's apartment. To see who would arrive fastest, J.C. drove Christopher using the freeway while Jonathan drove on side streets. During the drive, Jonathan called J.C.'s

2

cellphone sounding "high strung or upset." Jonathan said that while at a stoplight, Aguayo, with whom Jonathan had a "problem" and who was in another car, brandished a gun. Jonathan then stepped on the gas and ran the red light to get away. He told Christopher where he was so Christopher and J.C. could pick him up, and Christopher directed J.C. where to drive. When J.C. and Christopher arrived, Jonathan told them that Aguayo had followed him into the neighborhood.

M.P., who lived nearby, saw Jonathan park his car. He "was in a hurry" to jump into the black car driven by J.C. She testified that Jonathan put something looking like the handle of a gun into the waistband of his pants before getting into the black car. The car drove away "faster" than residential speed and appeared to be in a hurry.

According to J.C., after he and Christopher picked up Jonathan, there was no conversation about a plan other than wanting to "see" if they could "catch up [to] or see" Aguayo. At Christopher's direction, J.C. drove the car down two streets. As they approached an intersection, Jonathan pointed to Aguayo, who was walking on the sidewalk, and said, "Hey, that's the fucker who wanted to fuck me up." Christopher directed J.C. to turn left at the intersection toward Aguayo and pulled out a gun. As the car approached Aguayo, Christopher said, "Soon we will see."

Christopher lowered the window, and both Aguayo and Christopher exchanged words aggressively like, "What's up? What happened?" Christopher began shooting at Aguayo from inside the car. At some point, Aguayo, who also had a gun, fired a shot at J.C.'s black car, breaking a rear tail light. Aguayo fell to the ground and died from a gunshot wound to his head.

3

R.A. witnessed the shooting. She saw the black car "creeping" up from the wrong side of the street toward Aguayo, who was walking on the sidewalk. She saw an arm from the passenger side sticking out and then heard four to five gun shots fired consecutively. She did not notice Aguayo with anything in his hands or in a shooting stance.

Immediately after the shooting, J.C. drove to Jonathan's apartment. According to J.C., the first thing Christopher said after the shooting was "that happens when they mess with [his] people." Officers later located at J.C.'s house the gun used in the shooting. Christopher's defense theory at trial was that Aguayo shot first and Christopher returned fire in self-defense.

Christopher and Jonathan were tried together for Aguayo's murder. The jury deadlocked as to Jonathan's guilt but convicted Christopher.

## II.

On appeal, Christopher contends the trial court prejudicially erred in three ways: (1) by admitting three of M.P.'s pretrial statements made during her recorded interview with law enforcement, (2) by admitting J.C.'s purportedly speculative testimony elicited through leading questions, and (3) by revealing to the jury Christopher's prior felony conviction for conspiracy to sell an illegal substance. Christopher further argues that even if each error independently does not warrant reversal, they cumulatively do.

We review for abuse of discretion the trial court's rulings on the admissibility of evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 717 (*Waidla*).)

## A.

Christopher first challenges the admission of three of M.P.'s pretrial interview statements played for the jury. Considering those statements within the context of M.P.'s trial testimony, we see no abuse of discretion.

4

1.

M.P. testified for the prosecution on direct examination that on the day of the shooting, she saw an individual—later identified as Jonathan—park his car in her neighborhood, put something "look[ing] like the handle of a gun" into the back waistband of his pants, and "jump[ ] in the back seat" of a second car that appeared. She testified the second car drove away "fast[ ]" and appeared to be "in a hurry." As she saw Jonathan put the object into the back of his pants and run to the other car, she told her husband, "I think someone's going to get shot today."

Jonathan's defense counsel's cross-examination focused on whether M.P.'s memory was better immediately after the incident or years later at trial. He asked M.P. several questions about whether she told the detective during her post-incident interview that she saw a gun, whether she used the word "metal" to describe it, and whether the object was black "like the size of a cell phone." During Christopher's defense counsel's cross-examination, M.P. testified she did not remember telling the detective that Jonathan put a firearm in his waistband. On re-cross examination, Jonathan's counsel asked M.P. if she ever saw Jonathan "reach for and get anything . . . that looked like a gun; yes or no?" M.P. responded, "No." By the time of the People's redirect examination, M.P. testified she did *not* remember if she told her husband she thought someone was going to be shot.

Later, during the prosecutor's direct examination of the detective who interviewed M.P., the prosecutor asked to play the detective's recorded interview with M.P. as a prior inconsistent statement. Both defense counsel objected, arguing the prosecution could not play the entire interview because most of M.P.'s statements in the interview were not prior inconsistent

5

statements. The trial court overruled the objections, and the interview was played.

The next day, Jonathan's counsel moved for a mistrial based on the admission of M.P.'s entire interview, identifying one particular portion as problematic:

> [M.P.]: [T]hen I told my husband – when I saw him put somethin' in his pants I kinda said to my husband, "Someone's gonna get shot." And he goes, "What do you mean?" And I said because he put somethin' in his pants, I don't know if it was a gun or a knife. And then after that I told my husband, "I told you somethin' was gonna happen."
>
> [Investigator]: Yeah.
>
> [M.P.]: Because the minute he went that way, he gave the impression that he wanted to go see if that person that they were after was there.
>
> [Investigator]: So it appeared to you they were lookin[g] for somebody.
>
> [M.P.]: Mm-hm.

Jonathan's counsel argued these statements were not proper lay opinion and were inadmissible speculation and hearsay. He alternatively asked the court to strike the statements and admonish the jury—a request Christopher's counsel joined. The trial court denied the request for mistrial and overruled the objections. It explained that because M.P. was subject to recall, defense counsel could call her as a witness to ask about the statements.

On appeal, Christopher challenges the admission of three of M.P.'s pretrial interview statements: (1) "[Jonathan] gave the impression that he wanted to go see if that person that they were after was there," (2) M.P.'s

6

agreement with the detective's question asking if "it appeared to [her] they were lookin[g] for somebody," and (3) "[s]omeone's gonna get shot." Christopher contends these statements were inadmissible speculation and hearsay that regardless should have been excluded as more prejudicial than probative under Evidence Code section 352. We disagree.

2.

First, we are unpersuaded by Christopher's argument that the three challenged statements were inadmissible speculation. A lay witness may testify to an opinion if it is rationally based on the witness's perception and helpful to understanding his or her testimony. (Evid. Code § 800.) Here, as the People contend, M.P.'s opinions that someone was "gonna get shot" and that Jonathan "*appeared*" to be looking for someone and "*gave the impression* that he wanted to go see if that person they were after was there," were based on her personal observations, including that Jonathan put something like a gun or knife in his pants. (Italics added.) In her interview and at trial, M.P. stated that she also observed Jonathan "r[u]n to the car" that had arrived and "jump[ ] in the backseat" of that car, which drove away at "full speed" and "in a hurry."

Similarly, in *People v. Chatman* (2006) 38 Cal.4th 344, the appellate court found no abuse of discretion in the trial court's admission of a witness's testimony that the defendant "'seemed to be enjoying'" kicking a high school custodian. (*Id.* at p. 397.) The appellate court explained the testimony was admissible because the witness was a percipient witness speaking from "personal observation." (*Ibid.*) Likewise, here, M.P.'s statements were based on her personal observations of Christopher and Jonathan's conduct, coupled with the speed at which their car drove away. On this record, we cannot say

7

M.P.'s statements lacked any rational basis or failed to clarify her testimony, and we therefore see no abuse of discretion.  (See § 800.)

3.

Turning to Christopher's hearsay objection, we disagree with the People that M.P.'s statements were admissible under the state of mind exception to the hearsay rule.  (§ 1250, subd. (a)(1).)  The People's argument overlooks an essential requirement of that exception:  the declarant's mental state must be factually relevant and "itself an issue in the action."  (§ 1250, subd. (a)(1).)  Here, there is no indication the mental state of M.P.—a bystander without any connection to the victim or defendants—was relevant.

We agree with the People, however, that M.P.'s statements were properly admitted under different hearsay exceptions as prior inconsistent or prior consistent statements.  A witness's prior inconsistent statement is admissible where it "is inconsistent with his [or her] testimony at the hearing and is offered in compliance with [s]ection 770."  (§ 1235.)  Christopher does not dispute that section 770's requirements were met, given M.P. had not been excused and the trial court invited defense counsel to examine M.P. about her interview statements.  (See § 770, subd. (a).)

Christopher argues that M.P.'s testimony was not a prior inconsistent statement because rather than contradicting her earlier statements at trial, M.P. merely said she could not remember.  We are not persuaded.  "'As long as there is a reasonable basis in the record for concluding that the witness's "I don't remember" statements are evasive and untruthful, admission of his or her prior statements is proper.'"  (*People v. Rodriguez* (2014) 58 Cal.4th 587, 633.)  The record here supports a finding of that inference, including because M.P.'s testimony was not consistent at trial.  At the beginning of trial, she testified to seeing Jonathan put something like a gun into his

8

waistband and that she told her husband she thought someone was going to be shot. But by the time of the prosecution's redirect, she claimed she did not remember making this statement to her husband. And despite her testimony on direct, during cross-examination and re-cross, M.P. testified she did not remember telling the detective that Jonathan put a firearm in his waistband or that she saw Jonathan reach for anything looking like a gun. On this record, there was a reasonable basis for the court to find M.P.'s alleged lack of memory was based on an unwillingness to cooperate.

We also see no abuse of discretion in the trial court's admission of M.P.'s statements as prior consistent statements. Evidence Code section 791 permits evidence of a witness's prior statement "consistent with" his or her trial testimony "to support [the witness's] credibility" if offered: (1) following admission of a prior inconsistent statement to "attack[ ] . . . credibility," if the consistent statement was made before "the alleged inconsistent statement"; or (2) to rebut "[a]n express or implied charge" the witness's trial testimony "is recently fabricated or is influenced by bias or other improper motive," if the consistent statement was made before the alleged bias or improper motive arose. (§ 791.)

Here, defense counsel broadly attacked M.P.'s credibility by trying to discredit her memory about what she observed the day of the shooting and drawing out on cross-examination purported inconsistencies between her trial testimony and her pretrial interview—none of which had been played for the jury. Defense counsel also repeatedly emphasized M.P.'s observations were from "close to five years ago." "[S]ection 791 permits the admission of a prior consistent statement when there is a charge that the testimony given is fabricated or biased, not just when a particular statement at trial is challenged." (*People v. Kennedy* (2005) 36 Cal.4th 595, 614.) Thus, defense

9

counsel's broad, implicit charge of fabrication allowed the prosecutor to seek admission of M.P.'s prior interview statements that were consistent with her testimony. (*People v. Kopatz* (2015) 61 Cal.4th 62, 84.)

4.

Christopher next contends that even if admissible, M.P.'s three prior statements should have been excluded as more prejudicial than probative under section 352. But Christopher has not carried his burden to demonstrate the probative value of this evidence was substantially outweighed by undue prejudice. (See § 352.) Defense counsel for both Christopher and Jonathan extensively cross-examined M.P. in an attempt to discredit her memory of what she saw the day of the murder. M.P.'s pretrial interview statements were thus highly probative to bolstering her earlier trial testimony regarding her observations about Jonathan's conduct shortly before the shooting. Because similar observations or evidence were already before the jury, as discussed previously, Christopher fails to show how admitting the statements prejudiced him.

5.

Even had the trial court erred in admitting M.P.'s interview statements, we conclude any error was harmless. On this record, we cannot say it is reasonably probable the jury would have reached a different conclusion regarding Christopher's guilt had the court excluded M.P.'s interview statements about the defendants' behavior giving the impression that they were looking for someone and that someone was going to be shot. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Other evidence independently showed that after Christopher and J.C. picked up Jonathan— in a *different* car than the car Aguayo previously saw Jonathan driving—the three men drove around looking for Aguayo. J.C. testified that while driving,

they "wanted to see if they could catch up [to] or see" Aguayo. That testimony was corroborated by surveillance video showing the defendants' vehicle slowing down as it approached Aguayo. Another witness, R.A., testified that immediately before the shooting, she saw defendants' car "creeping up" to Aguayo as he walked on the sidewalk. She also testified to seeing a passenger holding a gun out of the car window but did not see Aguayo with a gun or in a shooting stance. Further, and specifically as to M.P.'s challenged interview statement to her husband that someone was going to be shot, we see no prejudicial error because M.P. testified to the same statement at trial before the pretrial interview was ever played for the jury.

Accordingly, even if erroneously admitted, M.P.'s few challenged interview statements could not possibly have affected the outcome. Thus, any error would also be harmless beyond a reasonable doubt even if, as Christopher contends, it rose to the level of a federal constitutional violation. (*Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).)

B.

Christopher next argues the trial court erred by admitting J.C.'s "speculative statements regarding the supposed plans, motivations, and intentions" of the defendants. He complains the testimony was the result of improper leading questions and was irrelevant and speculative.

1.

Specifically, Christopher challenges the following testimony elicited by the prosecutor on redirect:

> [Prosecutor]: However, you explained [previously] that there was no plan, but they wanted to see if they could find or see an individual?
>
> [Christopher's Defense Counsel]: Leading.

11

[Jonathan's Defense Counsel]: Leading. Objection. Assumes a fact not in evidence, your Honor.

The Court: Overruled.

[J.C.]: As I said before, there was a possibility that we would see him.

[Prosecutor]: When you say there's a possibility that we may see them, is that how it's interpreted to us that we may see them, we might? Or is it we might find them?

[Christopher's Defense Counsel]: Objection, your Honor. No foundation. Vague.

[Jonathan's Defense Counsel]: Leading.

The Court: Overruled.

[¶]. . .[¶]

[J.C.]: The way I interpreted was that we could get to see him while driving.

[Prosecutor]: We could get to see him?

[J.C.]: That's right.

[Prosecutor]: Was it your impression that Jonathan and Christopher wanted to find him?

[Jonathan's Defense Counsel]: Your Honor, objection. Speculation. No foundation. Based on what?

The Court: Overruled.

[J.C.]: Probably, yes.

[Jonathan's Defense Counsel]: Your Honor, that's pure speculation.

We conclude the trial court did not abuse its discretion in overruling the objections and admitting this testimony.

Generally, leading questions "may not be asked of a witness on direct or redirect examination," except in "special circumstances where the interests of justice otherwise require." (§ 767, subd. (a)(1).) Trial courts have broad discretion to decide when such special circumstances are present. (*People v. Williams* (1997) 16 Cal.4th 635, 672.) For example, "[a] leading question is permissible on direct examination when it serves 'to stimulate or revive [the witness's] recollection.'" (*Ibid*.) And "'[l]eading questions may be asked on direct examination if there is little danger of improper suggestion and where such questions are necessary to obtain relevant evidence.'" (*People v. Williams* (2013) 56 Cal.4th 165, 192.)

Here, J.C. previously testified on direct about the events leading up to the shooting. When the prosecutor on direct asked, *without* objection from either defense counsel, "Once you picked up Jonathan, was there a conversation inside the vehicle as to any sort of plan?" J.C. responded, "There was no further conversation about a plan. Just that they wanted to see if they could catch up [to] or see this individual." During cross-examination, defense counsel asked questions about whether J.C. knew of a plan to harm, shoot, retaliate against, or kill Aguayo. J.C. again answered there was no "plan," but that Jonathan indicated they "might bump into [Aguayo] on the way there" and "might possibly see him." Thus, on redirect, the prosecutor—in attempting to clarify J.C.'s testimony about a plan— correctly referenced that prior testimony. Because J.C. had already testified on direct that although there was no plan, he believed they were driving around to see if they might find Aguayo, there was little danger of improper suggestion through the prosecutor's questions.

13

As to Christopher's argument that the testimony was impermissibly speculative and lacked foundation, we see no abuse of discretion. J.C.'s testimony was based on his perceptions about what occurred shortly before the shooting and was helpful to a clear understanding of his testimony. (See § 800.) His testimony was grounded in his personal observations and relevant to explain why he and Christopher picked up Jonathan and drove around the neighborhood immediately before the shooting. Although he repeatedly testified on both direct and cross-examination that a plan was not discussed, J.C. also consistently testified that they wanted to "see" if they would "catch up [to] or see" Aguayo.

Christopher additionally argues the People failed to defend the admissibility of J.C.'s testimony under the prior inconsistent statement theory that the prosecutor proffered at trial. But Christopher overlooks "the rule . . . that if testimony is admitted on a wrong theory, but is admissible under another theory, its admission under the wrong theory will not constitute error." (*People v. Selby* (1926) 198 Cal. 426, 430.) As discussed above, our review of the record reveals no abuse of discretion in the trial court's ruling.

2.

As with M.P.'s challenged testimony, Christopher further contends that even if admissible, J.C.'s challenged testimony should have been excluded as more prejudicial than probative under section 352. We disagree with the People's claim that Christopher forfeited this argument by failing to object at trial on this ground. The record shows that Jonathan's counsel cited section 352 in objecting and moving to strike this testimony, an objection that Christopher's counsel expressly joined.

Turning to the merits of the section 352 objection, however, Christopher's conclusory argument on appeal—that the challenged testimony "pos[ed] an intolerably high risk of confusing the issues, misleading the jury, and undue prejudice"—is unpersuasive. (See § 352.) We see no substantial danger of undue prejudice here where, as discussed previously, the challenged testimony was consistent with J.C.'s prior testimony that there was no plan but that he believed, based on Christopher's and Jonathan's words and conduct, they were driving around to "see" Aguayo.

3.

Regardless, any error in admitting J.C.'s challenged testimony was harmless. (*Watson, supra*, 46 Cal.2d at p. 836.) It is not reasonably probable the jury would have reached a different conclusion regarding Christopher's guilt had the court excluded J.C.'s challenged statements about driving around to try to "see" Aguayo or his impression that Jonathan and Christopher "probably" wanted to find Aguayo.

Even without that testimony, there was ample, credible evidence that Christopher was the shooter and that he shot Aguayo in retaliation for his previous threat toward Jonathan. Other evidence established that after Jonathan called Christopher and J.C., Jonathan left the car Aguayo had last seen him driving to instead sit in the backseat of J.C.'s vehicle. Instead of leaving the neighborhood where Aguayo was last seen, Christopher—armed with a firearm—and the rest of the group drove around the area. J.C. also testified that as they were driving, Jonathan identified a man (Aguayo) walking down the street with "that's him"; Christopher told J.C. to turn down the street toward Aguayo; Christopher pulled out a gun and said, "Soon we will see"; and Christopher lowered his window shortly before the shooting. After the shooting, when J.C. asked "what the hell had just happened,"

15

Christopher said, "that happens when they mess with [my] people." Further, as the prosecutor expressly acknowledged in the line of questioning Christopher contests on appeal, J.C. had previously testified there was *no* plan—which was helpful to Christopher's defense.

Christopher contends the purported error was prejudicial because the jury was "required" to consider the challenged testimony. But the record also shows the jury was instructed that they were the judges of a witness's credibility and could consider how well the witness saw or perceived things about which the witness testified. The jury was additionally instructed they could give lay opinions the weight they thought appropriate and disregard all or any part of an opinion. And the jury was instructed to decide whether J.C. was an accomplice in deciding how to weigh his testimony. We presume the jury followed the trial court's instructions. (*Waidla*, *supra*, 22 Cal.4th at p. 725.)

Finally, we are unpersuaded by Christopher's argument that the purported evidentiary error is a federal constitutional violation subject to *Chapman* review. Even were that so, however, for the same reasons, any error was harmless beyond a reasonable doubt.

C.

Christopher next contends the trial court prejudicially erred by revealing Christopher's prior felony conviction to the jury. We accept the People's concession to the error but conclude it was harmless on this record.

1.

Christopher was charged in count 2 with being a felon in possession of a firearm. (Pen. Code § 29800, subd. (a)(1).) The information alleged that Christopher had been previously convicted of a felony for conspiracy under Penal Code section 182, subdivision (a)(1). At trial, the parties stipulated to

16

Christopher being a "person prohibited" from possessing a firearm, without revealing to the jury Christopher's 2014 felony conviction for conspiracy to distribute cocaine. The court, however, began reading to the jury a portion of the parties' written stipulation intended only as background information for the court. As a result, the court inadvertently read to the jury the parties' stipulation as to count 2 that Christopher "suffered a felony conviction for a violation of Penal Code Section 182" before defense counsel interrupted to say he had a motion.

The court immediately met with the attorneys outside the jury's presence, and Christopher's counsel moved for mistrial, contending the court's reading of this information to the jury could not be cured. After a recess, the court stated its belief that the error could be cured by admonishing the jury to disregard the portion of the stipulation previously read. Christopher's counsel argued that if the court were to deny the motion for mistrial, then the court should clarify for the jury that the conviction was for violation of Penal Code section 182, specifying that the conspiracy was "to possess for sale certain narcotics, a controlled substance," and that it occurred in 2014. The prosecutor agreed the best recourse was to explain the nature of the conviction in greater detail. Christopher's counsel further proposed that the court should read CALCRIM No. 2511, admonishing the jury to consider the prior conviction solely for the purpose of count 2.

The trial court denied the motion for mistrial. As requested by Christopher's counsel, however, it read the following stipulation to the jury:

> The People and Christopher Pellegrin hereby stipulate to the following:
>
> For the purpose of Count 2, as charged in the Information, Christopher Pellegrin suffered a felony conviction for a violation

17

of Penal Code Section 182(a)(1), conspiracy to possess for sale a controlled substance in the county of Tulare on or about July 31, 2014.

It has been stipulated between the parties that Christopher Pellegrin was a person prohibited from owning or possessing a firearm on the date of November 28, 2017. No other evidence is necessary to prove that fact.

Also as requested by Christopher's counsel, the court instructed the jury that Christopher was "charged in Count 2 with unlawfully possessing a firearm in violation of Penal Code section 29800" and that to prove Christopher's guilt of this crime, the People must prove, among other elements, that Christopher "was a prohibited person from possessing a firearm." The court further instructed the jury that it "may consider evidence, if any, that [Christopher] was prohibited from possessing a firearm *only in deciding whether the People have proved this element of the crime. Do not consider such evidence for any other purpose.*" (Italics added.)

2.

"Having a jury determine the truth of a prior conviction allegation at the same time it determines the defendant's guilt of the charged offense often poses a grave risk of prejudice." (*People v. Calderon* (1994) 9 Cal.4th 69, 75.) That is because of the "significant risk that the prior conviction[ ] may be considered by the jury in deciding the question of guilt or innocence of the crime currently charged." (*Id.* at p. 76.) Penal Code section 1025, subdivision (e), thus provides that where, as here, "the defendant pleads not guilty, and answers that he or she has suffered the prior conviction, the charge of the prior conviction *shall neither be read to the jury nor alluded to during trial.*" (Italics added.)

18

We agree with Christopher and accept the People's concession that the court erred in disclosing to the jury Christopher's prior felony conviction. Indeed, the court had previously accepted the parties' stipulation to Christopher's "prohibited" status *without* revealing to the jury his prior conviction. But we conclude the error was harmless.

"The prejudicial effect inherent in evidence of prior offenses varies with the circumstances of each case." (*People v. Wade* (1996) 48 Cal.App.4th 460, 469.) Relevant factors include the degree of similarity between the prior and charged offenses, "how recently the prior conviction occurred, and the relative seriousness or inflammatory nature of the prior conviction as compared with the charged offense." (*Ibid.*) Because Christopher's prior offense was conspiracy to possess a controlled substance for sale, the nature of the charged murder was considerably more serious and inflammatory than the prior conspiracy conviction. The jury was instructed to consider the evidence only in deciding whether the People had proven the "person prohibited" element of count 2. And the jury was expressly instructed not to consider the nature of the prior conviction. We are unpersuaded the error rose to the level of a federal constitutional violation under *Chapman*. Thus, considering these factors, the strength of the evidence at trial against Christopher, and the relative weakness of his defense, we conclude it is not reasonably probable Christopher would have obtained a more favorable result absent the error. (*Watson, supra*, 46 Cal.2d at p. 836.)

D.

In his final argument on appeal, Christopher contends the cumulative impact of the prior alleged errors deprived him of due process and a fair trial. As discussed previously, we concluded there was no error in admitting the challenged statements from M.P.'s interview or J.C.'s contested testimony.

And we concluded the trial court's error in revealing Christopher's prior conviction for conspiracy to the sale of a controlled substance was harmless. Thus, because there are not multiple errors to cumulate, there is "nothing to cumulate." (*People v. Duff* (2014) 58 Cal.4th 527, 562.) But even had Christopher demonstrated the admission of M.P. and J.C.'s challenged testimony was error, we have found each error harmless separately. Considering these purported errors together, we likewise conclude on this record that their cumulative effect does not warrant reversal of the judgment. (*People v. Bolden* (2002) 29 Cal.4th 515, 567-568.)

III.

We affirm.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.

20